ÆOLIAN CO. v. CUNNINGHAM PIANO CO.

(District Court, E. D. Pennsylvania. April 23, 1918.)

No. 1715.

1. PATENTS ☞37—ELEMENTS OF PATENTABILITY.

Whenever a new thought of real value is brought into combination with some means by which it is given physical expression, the combination is patentable, although the means may by itself show limited novelty, or even be such that by itself it would not be patentable.

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—PLAYER PIANO ATTACHMENT.

The Young patent, No. 692,968, for an improvement in player pianos, consisting of a line on the music sheet by which to guide the movement of the controller, claims 1 and 2, disclose novelty and invention, and are valid; also *held* infringed.

In Equity. Suit by the Æolian Company against the Cunningham Piano Company. On final hearing. Decree for complainant.

See, also, 244 Fed. 478.

George D. Beattys, of New York City, and Joseph C. Fraley, of Philadelphia, Pa., for plaintiff.

Edmund B. Whitcomb and Hector T. Fenton, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This controversy concerns claims 1 and 2 of letters patent No. 692,968, dated February 11, 1902, issued to the plaintiff, as assignee of Francis L. Young, the inventor. There is a concord of opinion that claim 1 affords an adequate test of the rights of the parties, so that this only will be discussed.

The invention relates to the class of mechanical instruments variously known as player pianos, pianolas, and by other names of designation. The appeal which they make to purchasers is to those who desire to have the means of producing music at will, although they are without the musical training and skill to play the ordinary piano. To enable the unskilled person to get music out of a piano, certain mechanical appliances are made use of which are themselves brought into action through the movement of certain levers or controllers; musical results being produced by and through this manipulation.

Prior to the invention claimed to have been made by Young, the player of the instrument was guided in his manipulation of these levers by means of instructions which appeared upon the music sheet. As the sheet moved under the eye of the performer, the instruction for his guidance would also be brought before him. The instruction necessarily must be understood by him, its significance grasped at once, and through and by a mental operation interpreted in terms of lever movements. This included the particular lever to be moved, the direction in which it should be moved, and the extent and duration of the movement. It was found that this operation called for a degree of skill in the performer which all who wished to be performers did not possess. A consequence was that intending purchasers of

these instruments, who listened to the music produced by a skilled performer, found that much of the effect was lost when they attempted to play the same music.

A thought occurred to Young, which is the basis of his claimed invention. The thought was this: A certain line or course of movement could be visualized as followed by every performer. If, therefore, a device was used to describe this line, and if it could be preserved by inscribing it upon the music sheet, then the effects produced during such playing would be represented by that line, and if a device were introduced by which that same line could be followed by an unskilled player, he could reproduce the music which the skilled player had brought out. This thought resulted in the application for and grant of these letters patent: The first thought was materialized through and by a pointer being attached to the levers, so that the point of it would pass over the music sheet and describe what may be called the movement of the music as played.

Through the simple expedient of attaching a pointer to the controller, and extending this over the music sheet, the line described by the manipulation of the controller in skilled hands could be visually followed in its movements over the music sheet. The like simple expedient of attaching a pencil to the underside of the pointer, so as to touch the music sheet throughout the whole movement of the pointer, or of the music sheet under it, would leave a mark or line on the music sheet as the controller was manipulated. By the aid of a like pointer this line could be followed by a second performer. A modicum of skill was called for in following this line. The practical result was this: The services of a famous artist could be secured to play the music. The effects produced by his rendering would be represented by a line thus made upon the music sheet. Music sheets to any number, with such a line upon them, could be supplied to unskilled users of the instruments. By following the line thus marked on the music sheet, all the effects of the most skillful manipulation of the controller could be thus reproduced.

[1] This brings us to the consideration of one of the defenses to the claim of the plaintiff. It is presented in the averment of lack of invention. Bearing upon this a finding is made of a fact which we do not understand to be in dispute. The fact is that the thought which came to Young of having a line which, for want of a better term, we will call the line of expression, visibly traced upon the music sheet by a skilled performer in and by the very act of giving his rendering or interpretation of the music, and of having this visible line followed and retraced by the unskilled performer, was a thought which had occurred to no one before Young. The mere thought could not, of course, be given the protection of a patent. It must first be given expression through and by some physical means, by the operation of which it would be exhibited. Whenever a new thought of real value is thus brought into combination with some means by which the thought is given physical expression, the combination is patentable, although the means may by itself show limited novelty, or even be such as that by itself it would not be patentable. This principle is

well established, and we do not understand it to be in dispute. A reference to the cited case of Michle v. Whitelock, 223 Fed. 647, 139 C. C. A. 201, is a sufficient confirmation of it.

[2] The plaintiff has a right to the two findings for which its counsel contend. These findings are that the prior art does not disclose a then existing knowledge of what has been called the "resultant" line, hereinbefore referred to, and, of course, does not disclose any means, such as a pointer, for following the turnings of such a line. The prior art, it is true, does disclose, through indicated marks of instruction (including the Webber line) upon the music sheet, a means of interpreting the music sheet, and a second performer would have the benefit of the same instructions, and in this way, if the skill of the second performer were equal to that of the first, and if each translated the instructions into the same manipulation of the controller, the musical results would be the same. It was, however, the happy thought of Young to resolve this "if" into a certainty by requiring no more of the second performer than that he should so manipulate the controller as that the end of the pointer would follow the indicated line throughout its whole course, as it had been drawn by the first performer.

It is not enough, however, that a claimed invention should possess the patentability above mentioned. An invention may be patentable in this sense, but before an applicant for letters patent can claim the right to their issue, he must not only disclose a patentable invention, but he must claim it, and what he discloses and what he claims must be patentable. If he discloses less or claims less than what he has invented, and which he might have disclosed and claimed, he is limited to that which has thus been disclosed and claimed, notwithstanding the fact that he might have claimed more. Even if he sets forth claims in his application, and these are rejected or voluntarily withdrawn or limited by amendment, he gets by his letters patent only what the letters cover, and his rights under the letters patent are restricted to what has been granted to him, and the grant does not expand to embrace more than is covered by the actual grant, because of the fact that the grant might have been more extensive than was made. All which is disclosed beyond what is granted is given to the public, and the public cannot be denied the use of anything which is not in the grant. Moreover, what is disclosed and what is claimed must have the support of the required oath of the applicant, and no letters patent covering an invention which lacks this supporting oath are valid.

With respect to the broad question first suggested, this observation may be made: The mechanical means by which physical expression of the thought, which came to Young, was given, makes little call upon the inventive faculty. Young's contribution to the art was in his conception of the thought of doing what has been before described, and of giving physical expression to this thought through the mechanical means indicated. He had little, if any, purely mechanical knowledge or skill, and all which was required and all which was applied in making the combination which he claimed was sup-

plied by the mechanic who was called in to make the actual construction.

The claims of the patent are four in number. Claims 1 and 2, however, are the only ones in issue, and claim 1, as before stated, presents all the questions which arise in the case.

The defense emphasizes these facts: An original application, No. 73,644, was filed August 29, 1901, the two claims of which were allowed on October 29th following the application. This application, however, was abandoned and withdrawn, and is not now the basis of any claim of right of the plaintiff. A second or renewed application, No. 82,393, bearing the file date of November 15, 1901, was then made. This application was amended by the insertion of matters which are deemed by the defendant to be vital to the present controversy, as without these inserted matters the defendant's view is this controversy would not have arisen. Additional claims were also inserted by amendment.

The defendant asserts the invalidity of claim 1 (to which we will confine the discussion) because of a lack of patentable novelty, in view of the prior art. This assertion of invalidity is based upon the thought that the claim covers and comprehends what is called in this record "an expression line and an extended expression control lever." Emphasis is given to this, because of the fact that claims 3 and 4 of the patent are specifically limited to a tempo line and an extended tempo controller. A further defense is made, based upon the assertion that claim 1 is broader than the disclosure of the specification and includes matters beyond such disclosure.

There is also a general denial of infringement, in that the defendant's device is a departure from that of the plaintiff in the principle of its construction and differs from it in its mode of operation. There is a less broad denial of infringement, in that the two devices are counterparts only so far as each follows the prior art, and that if claim 1 is interpreted in the light of the limited disclosure of the specification, and in the light of the limitations imposed as a consequence of the experience of this application in the Patent Office, there is no conflict between the two devices.

Bearing upon the point made by the defense respecting the abandoned application, this explanation is made, and the facts found in accordance therewith. The original application was made on the eve of the departure of the inventor for Europe. The question arose in his mind of whether the application and its claims as filed were broad enough to cover what he had had in his mind to be covered. The point he made was conceded by the patent solicitors, who had charge of the patent, to be well taken. The next question presented was the mode and manner of making the correction. The problem was solved by the withdrawal of the original application, thereby paving the way for the corrected application to take its place. This would seem to have been the best method by which to meet the difficulty. No patent had issued when the error was discovered. To have followed up the application in which the error occurred with the issue of letters patent, and to have then asked for a reissue, would not only have been practically

useless, but would have introduced an additional difficulty, in that it could not have been asserted that letters patent had issued by "mistake," when in fact the mistake had been discovered before the issue. We are unable to find in either this original application, or in its withdrawal, any of the elements which would make the doctrine of estoppel applicable.

The defense of invalidity, because of no advance upon the prior art, has already, in its main aspect, been sufficiently discussed. The point made is embraced in the expression "follow." The prior art disclosed instructions, including what is known as the Webber line. The line is delineated by a series of dots, which makes of it a broken line. It is none the less, however, a line. It is also true that it is a line of instruction. It can be followed in the sense of being interpreted into a movement. This calls for a mental process like that which is called for by words or other marks of instruction. The "following" of such a line is the following of instruction, and is a different thing from a purely visual following through and by seeing that the end of a pointer is kept over the line throughout its whole course. In this difference resides the advance made by Young.

The defense that claim 1 is comprehensive of matters not disclosed in the specification is not supported by a reading of the application. The thought disclosed by the specification and that covered by the claim is the same.

The question of infringement is disposed of by the observation that the defendant has appropriated and incorporated in his device the essential element of the plaintiff's invention. It is true that the defendant's device includes much, its right to use which is clear, and indeed not in dispute. To distinguish between what it has the right to use and that which it had no right to use is clearly presented by dropping out of the device the feature of a line to be followed by means of a pointer extending over the music sheet. The attack made upon the patent as lacking in the essential supporting oath depends upon the other point made that the claim is an expansion of the disclosure of the specification. If the claim does not go beyond the specification, then there is the required supporting oath. The picture of this invention drawn by counsel for defendant, in which it is depicted as abandoned, is not supported by the facts disclosed by the evidence. The thought which is at the basis of the Young invention is one easily grasped when once suggested. It is so simple the only wonder is that it had not occurred to those who preceded Young. Its simplicity, however, does not argue unpatentability. Its practical value is obvious. The fact, also, that the Young invention has gone for 16 years without attack, and without serious infringement, before the device of the defendant was introduced upon the market, would seem to argue general acquiescence in his claim of exclusive right. Nor do we see that the fact that the plaintiff made use of another patent, which possessed features preferable to some features of the plaintiff's device as patented, justifies the inference of either abandonment or lack of utility in the patented device, or makes of it a mere paper patent.

These broad considerations have had with us a controlling influence.

If they are dropped out of view, the argument of counsel for defendant forces the mind to the conclusions for which counsel contend. With these broad claims of merit before us, however, the conviction remains that Young "came upon" a happy thought, which makes his claim to the reward of an inventor an appealing one. This calls upon us first to find patentability, if it can be found, and to follow this with a like broad and liberal interpretation of the claims of the patent as allowed. It is without doubt true that plaintiff's footing, from which to make its claim of right, has little, if any, margin of safety.

We, however, find claims 1 and 2 of the patent to be valid and infringed, and a decree embodying these findings may be submitted.