## JUDELSON v. HILL LAUNDRY EQUIP-MENT CO.

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 138.

1. Patents ⬤⟹328—1,513,594, claims 3, 4, for laundry drier, held valid and infringed.

Judelson patent, No. 1,513,594, claims 3 and 4, for laundry drier working on the indirect drying principle, and consisting of a new combination of old elements, held valid and infringed.

2. Patents ⬤⟹39—Discovery and correction of difficulty in existing structure may constitute patentable novelty, though means for introducing new element into combination are old.

Patentable novelty may sometimes be found in discovering what is the difficulty with existing structure, and what change in its elements will correct the difficulty, even though the means for introducing that element into the combination are old.

3. Patents ⬤⟹325(6)—Failure to dismiss bill in patent infringement suit with costs as to withdrawn claims held not error, where other claims sustained.

As to claims of patent in suit withdrawn on plaintiff's motion before interlocutory decree was entered, and providing that matter of costs should abide final decree, but that no costs should be allowed plaintiff to date of interlocutory decree, defendant's assignment of error that court erred in not dismissing the bill with costs as to claims dismissed, is not sustained, where other claims of patent were properly sustained.

4. Patents ⬤⟹325(6)—Appellate court cannot order bill in patent infringement suit dismissed with costs as to claims withdrawn before entry of decree.

Appellate court cannot properly order bill in patent infringement suit dismissed with costs as to claims withdrawn before entry of decree.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Julius Judelson against the Hill Laundry Equipment Company for an injunction and accounting, charging infringement of letters patent No. 1,513,594, issued to him October 28, 1924, for an improvement in driers. Originally each of the first six claims of the patent was relied on, but prior to entry of the decree claims Nos. 1, 2, 5, and 6 were withdrawn on plaintiff's motion. An interlocutory decree was entered, sustaining and holding infringed claims Nos. 3 and 4, and directing the usual accounting and injunction (18 F.[2d] 594). From this decree, defendant has appealed. Affirmed.

O. Ellery Edwards, of New York City (Albert E. Fay, of New York City, of counsel), for appellant.

Morris Kirschstein, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. It was conceded upon the argument that, if claims Nos. 3 and 4 are valid, they were infringed. But the defendant asserts the invalidity of said claims, postulating his contention upon the prior art and the doctrine of equivalency.

The art involved relates to laundry driers, which may be described generally as consisting of a drying cabinet, or chamber for the wet clothing, and a heating apparatus, usually located beneath the drying chamber. Driers operated upon the principle of direct drying permit the hot gases from the heater to pass directly into the drying cabinet. In driers operated upon the principle of indi-

rect drying, the products of combustion do not themselves enter the drying chamber. They are conducted through a series of pipes or a heating chamber beneath the drying cabinet, and by radiation impart heat to fresh air, which is taken into the drying chamber and thus caused to circulate until, laden with moisture and fumes from the clothes, it passes out of the cabinet into a flue. Direct driers, which burned gas, were found objectionable, because they consumed more gas than indirect driers, and because the products of combustion had a tendency to discolor the clothes. The patent in suit relates to a drier operating upon the indirect principle. Claims 3 and 4 read as follows:

"3. In a drier, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, a plurality of baffles in said chamber and an exhaust flue extending therefrom.

"4. In a drier, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, a plurality of baffles in said chamber, one of said baffles located adjacent said opening and adapted to direct the heat vehicle to one end of the chamber."

[1] The plaintiff stands upon his filing date, April 18, 1921, and whatever is established before this date is prior art. The defendant's best references are to its own driers, shown as Exhibits A and B. For many years prior to the date in question, the defendant and its predecessors had sold indirect driers essentially similar to the structure disclosed in the patent to Belden, No. 784,026, dated March 7, 1905. Exhibit A shows a coal-burning apparatus; Exhibit B, one which burns gas. In each the heat vehicle passes into a pipe or tubular flue, which is turned back and forth upon itself, in order to retard the heat vehicle and increase radiation before the hot gases pass into an exhaust flue. This tube, or rather series of tubes, is placed underneath the drying chamber and radiates heat into it. The circulation of air within the drying chamber need not be described for present purposes.

The plaintiff and his licensees had, prior to 1921, dealt in driers operated upon the direct drying principle previously described. To obviate the disadvantages already mentioned as inherent to that system, the plaintiff experimented until he produced the drier covered by his patent. The heating chamber of his drier is a rectangular box extending substantially the full depth of the drying cabinet, with an opening on one side through which the heat vehicle passes into the box. Within the box is a series of baffles, so arranged as to direct the hot gases toward one end of the box, and thence by a devious path toward the opposite end, whence they escape through an exhaust flue. In the progress of their journey, thus retarded, the hot gases give up heat, which is radiated through the flat top and sides of the box to heat the fresh air which passes over them in entering the drying cabinet. The patentee's object, as gathered from the specifications, was to provide a drier operating on the indirect principle, which should be efficient in drying, simple and cheap in construction, economical of heat energy, and compact enough in size to meet the practical needs of the trade in buildings where space for installation was limited. Apparently he produced a drier having these characteristics, for it promptly attained substantial commercial success.

The defendant argues that the plaintiff's drier is essentially identical in process and result with the defendant's indirect driers which had long been on the market, and that the baffles in plaintiff's rectangular heating box are the equivalent of defendant's tubes bent back and forth, so as to give a long passage for radiating purposes. The correctness of this contention is the decisive point in the case.

The testimony of plaintiff's expert, Mr. S. B. Little, states definitely that retarding the flow of hot gases by baffles is more efficient in securing heat radiation than is retarding by tubular flues such as the defendant had used. This is due to the fact that, when a hot gas is passed through a circular tube, much of the heat is confined to a central core. Baffles break up the heat core and impart more heat to the radiant itself. The result, in his opinion, is that more gas must be burned to accomplish the same drying effect where the radiation is from the tubular flues. He also points out that the tubular construction is not so economical of space. This, indeed, is admitted by defendant's president, Mr. Schrenkeisen, who says that at least 2 feet of lateral space is needed for defendant's small tubular drier. Plaintiff's can be installed within a 20-inch space. Mr. Little also testified that the sharp turns between contiguous tubes tend to destroy the current in the flow of the hot gases and to

create back pressure in the radiant. None of this expert testimony was contradicted by any other expert.

[2] We cannot find, therefore, that the plaintiff's heating chamber with baffles is a mere substitution of equivalents for defendant's series of bent tubes. There is not complete identity in function and result, for the baffles break up the mass of the gas and extract more heat therefrom. The drier constructed under the patent in suit produces a more efficient drier than the market had previously known. It is simpler and more compact in construction, and apparently more economical of fuel, as well as of space. While the plaintiff used only old elements, he has combined them into what we believe was a patentable improvement. Patentable novelty may sometimes be found in discovering what is the difficulty with an existing structure, and what change in its elements will correct the difficulty, even though the means for introducing that element into the combination are old. Miehle Printing Press & Mfg. Co. v. Whitlock Printing, etc., Co., 223 F. 647, 650 (C. C. A. 2).

The defendant introduced testimony tending to prove that its infringing structure was produced by it without knowledge of the plaintiff's disclosure and before the patent in suit was issued. From this it is argued that the substitution of the box and baffles for the tube was merely a mechanical equivalent. To this we cannot agree. We think it took more imagination than ought to be credited to the ordinary artisan to conceive of the rectangular box and baffles in place of the series of tubes. The presumption of invention arising from the grant of the patent was not overcome by defendant's evidence. See Malleable Casting Co. v. Am. Steel Foundries, 182 F. 626, 638 (C. C. N. J.). The defendant's similar improvement may itself have been the same invention as the plaintiff's, but it came later than plaintiff's application date, and cannot avail against the monopoly granted him by the Patent Office.

[3, 4] The defendant complains because the bill was not dismissed, with costs, as to claims Nos. 1, 2, 5 and 6. These claims were withdrawn by plaintiff before the decree was entered, and it provides that "the matter of costs herein shall abide the final decree, but no costs are to be allowed plaintiff to date of this decree." The defendant's real complaint is that no finding of invalidity was made in respect to the withdrawn claims. That question, however, is not before us, nor can we properly order the bill dismissed, with costs, as to withdrawn claims. The assignment of

error is that "the District Court erred because it did not dismiss the bill of complaint, with costs." As claims No. 3 and No. 4 were properly sustained, the error charged is not substantiated. See Thomson-Houston Elec. Co. v. Elmira & H. Ry. Co., 71 F. 886 (C. C. N. Y.).

The decree must be affirmed, with costs in this court to the appellee.