ELECTRIC STORAGE BATTERY CO. v. GOULD STORAGE BATTERY CO.

(Circuit Court of Appeals, Second Circuit. August 24, 1907.)

No. 255.

1. PATENTS—SCOPE—CONSTRUCTION OF CLAIMS.

While a patentee is entitled to all the beneficial uses of his invention, when the property or function is inherent in the invention or is described or claimed by him, yet where such change or function is neither described nor claimed, and especially where other changes are described and insisted on as essential and specifically claimed, it is significant proof that the change which has not been disclosed by him to the public is not his invention.

2. SAME—INFRINGEMENT—ELECTRIC CURRENT REGULATOR.

The Mailloux patent, No. 430,868, for a regulating system for electric circuits, construed, and held valid, as disclosing a patentable improvement on the devices of the prior art, but, as limited by its terms, not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, dismissing bill for infringement of complainant's patent, No. 430,868, granted June 24, 1890, to Cyprien O. Mailloux, for regulation system for electric circuits. The opinion of the Circuit Court is reported in 148 Fed. 695.

A. B. Stoughton (Edmund Wetmore, of counsel), for appellant. Richard Eyre and W. H. Kenyon, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM.   The patent in suit relates to improvements in the regulation of the compensating action of a storage-battery when applied to compensate for fluctuations of electrical condition of a working-circuit, and consists essentially in reinforcing such battery by a supplemental generator at the time of discharge and regulating the action of the re-enforcing agent automatically by the electric condition of the working-circuit.   The claims involved are as follows:

"2. The combination with a dynamo-machine and the working-circuit supplied thereby, of a compensating storage battery, a supplemental re-enforcing generator in the battery connection, and means for varying the power of such generator in accordance with fluctuations of current on the working-circuit."

"6. The combination, with a dynamo-machine and circuit supplied therefrom, of a compensating storage-battery fed from such dynamo and a supplemental dynamo whose electro-motive force re-enforces the battery on discharge, and whose field is variable according to the fluctuations of electrical energy on the supplied current."

The defendant denies patentable novelty and asserts noninfringement on various grounds.

We are relieved from a discussion of complainant's or defendant's apparatus, or of the state of the prior art, by the exhaustive, accurate, and eminently fair opinion of the court below, in which, for reasons stated by it, it concluded that the patent was valid, but was not infringed.   We are not satisfied that the evidence shows that electrical connections in the working-circuit, as distinguished from the generator circuit, to regulate the supplemental generator, "produce a different kind of regulation and distinct results," but with the other statements of fact in Judge Hazel's opinion we are in accord.   Indeed, we fail to find in the briefs or argument for complainant any criticism of those statements material to the issues involved herein.   To a considerable extent the findings as to said issues are referred to and relied upon by complainant in its brief.   We shall confine ourselves, therefore, to a discussion of the conclusions of the court below raised by the following assignments of error, namely:

"First. In deciding that the patent in suit is limited to an apparatus in which the regulating coil is situated in the generator circuit and operates directly upon the supplemental dynamo machine or 'booster.'

"Second. In deciding that the defendant's system, cannot be included in the scope of claims 2 and 6 in suit, and its means of regulation do not correspond to those of complainant nor do they produce the same result."

There seems to be some clerical error in the phrasing of this first assignment of error.   The court did not hold that under the patent

the regulator coil must be "situated in the generator circuit," but did hold that it must be situated in the "working-circuit," as distinguished from the "generator circuit." An understanding of the questions presented by this assignment of error will be more easily obtained by reference to what is called in the record a simplified drawing of the Mailloux patent:

A is the main dynamo, B the storage battery, D the supplemental generator or booster, and M a regulation coil which controls the booster, as indicated by the arrow, being itself responsive to the fluctuations of electric condition on the circuit in which it is located. The drawing shows a circuit, colored red, which leads from the main generator to the points of connection, 1 and 3, with the battery branch; a circuit, colored blue, through which the current flows when the battery is charging or discharging; a circuit, colored green, which leads from the points of connection (1, 3) out to the translating devices—trolley cars, lamps, or what not—and carries the algebraic sum of the red and blue currents. This circuit, lettered X, Y, is supplied by the generator, as stated in the specification, "directly or indirectly"—directly as to the energy which is not stored up in the battery and indirectly as to the energy which is first stored up in the battery. This is the circuit which carries the current which does the work sought to be done by the entire system. Complainant's expert Duncan admits that he understands "the term 'working-circuit' to refer to that part of the system which carries the total current at each instant that the translating devices are taking, or, put in other words, the circuit that at each instant is carrying the algebraic sum of the generator and battery circuits." It is also called by complainant's expert Woodbridge

the "outside supply circuit." All the witnesses concur in describing the blue circuit as the "battery circuit," and further concur that the phrase "generator circuit" is a proper one to distinguish the circuit leading from the main generator to the battery connections (1, 3).

In the defendant's apparatus the regulation coil, which controls the booster through intermediate devices, is located in the generator circuit. Complainant's expert concedes that if the specification of the patent should be construed as employing the terms "working-circuit," "main line circuit," "main circuit," and "mains" synonymously—that is, that each expression applies to the same circuit—the regulation coil of defendant would not be included within the description of the patented device. So far as the second claim is concerned this concession disposes of the question of infringement, for that claim expressly refers to a control of regulation through fluctuations of "current on the working-circuit." Indeed, although infringement of that claim is still contended for in the brief, it is thought that upon the oral argument counsel practically admitted that they could rely only upon the sixth claim.

Complainant seeks to differentiate claim 6 from claim 2, so as to hold defendant thereunder. That claim covers a regulation coil so placed as to be "variable according to the fluctuations of electrical energy on the supplied circuit." It is suggested that claim 6 does not in terms refer back to the specifications or drawings; and it is contended that the phrase "supplied circuit" is to be more broadly construed than the phrase "working circuit," that defendant's coil is in a circuit supplied by the main generator, that it is placed there to compensate for load changes or electric fluctuations of energy on X and Y, and that such fluctuations on X and Y are, partially at least, found in the generator circuit. "In defendant's system the regulation coil receives the smaller fluctuations in current, because the battery is connected outside of the coil and absorbs most of the current fluctuations, allowing, however, enough of them to fall on the generator and the coil and the red circuit for effecting the desired regulation." (Complainant's Brief.)

We do not find this argument persuasive. It seems to be an afterthought. No such differentiation between the claims was suggested when they were discussed by complainant's expert in his analysis of the patent. He says:

"The regulating coil of the auxiliary generator must be so connected to the main circuit that it shall feel the effect of the change of load in the working-circuit in order to make the auxiliary generator perform its regulating functions. In the drawings Mailloux has shown the regular coil * * * so placed in the circuit that all of the currents supplied to the working-circuit passes through the coil, and all of the changes of current that occur in the working-circuit also occur in the coil."

He quotes from the specifications the phrase, "It is only necessary to connect to the mains the proper regulating-coil or other electro-responsive device," discusses the second claim, whose "last element is a coil interposed in some part of the main circuit so as to be affected by fluctuations of the load," and then, taking up the sixth claim, says:

"This claim is a little more specific than claim 2, in that it calls for the charging of the battery from the main generator, and it limits the means for

varying the power of the supplemental generator to a field coil for that generator, variable according to the fluctuations of electrical energy on the supplied circuit."

Throughout the specifications and claims the circuit into which the regulation coil is to be electrically connected is referred to indifferently as "main circuit," "working circuit," "mains," "main line circuit," "main line," or "supplied circuit," and there is nothing to indicate that these varying terms import any variances in the subject to which they refer. Every electric circuit is necessarily a "supplied" circuit. If current were not supplied to it from somewhere, it would be a useless bit of metal. The main dynamo is the source of supply directly from itself or indirectly through discharge from the secondary battery which it had itself supplied, and nothing in the specification indicates that the "supplied circuit" of the claim is to be limited to direct supply. The ninth claim employs the phrase "changes of electrical condition of the main or working circuit," and the same phrase is found in the specification, where it says: "Another amperometer, C, is also shown interposed in the main or working circuit"—the drawing showing C in the working circuit. Evidently the patentee understood that the terms "main circuit" and "working circuit" were synonymous or interchangeable, and the overwhelming weight of testimony is to the effect that the art would so understand them. When, therefore, the patentee says that "the coil in any case [should be] electrically connected into the main circuit," it seems reasonably clear that what he intended to describe and claim was a coil connected into the working circuit. The whole teaching of the patent is to the same effect. Six different drawings show variations of his system, and in every one of them the regulation coil is connected into the working-circuit.

That the patentee, by the use of the term "supplied circuit," did not mean to include the generator circuit, is further indicated by diagram prepared by complainant to illustrate the following statement in the specifications, describing the drawings:

"B indicates a series or multiple series of secondary battery cells connected to the terminals of the armature, A (of the main dynamo), as indicated."

DEFENDANT'S EXHIBIT—DUNCAN DIAGRAM "D"

A is the main generator, having its terminals directly connected to the secondary battery, B. D is the supplemental generator or booster, and M is the regulation coil located in the working circuits, X, Y.

Complainant's expert testified that this drawing correctly represents the patented arrangement as described, and that if the battery be connected to the terminals of the armature of the main generator, as stated in the Mailloux patent, and arranged as shown in said diagram, there could be no difference of terms between the working circuit and the main circuit, and that with the connections thus made there is no place in the circuit where a regulating coil could be so placed as to have the current changes that occur in defendant's field coil of its counter machine, although the drawings of the patent show plenty of room for the location of defendant's coil. He admits, therefore, that in his drawing illustrating the patent there is no generator circuit. The patent nowhere refers in terms to a generator circuit. When, therefore, the patentee referred to the supplied circuit, it may fairly be assumed that he could not have meant a coil located in the generator circuit, for he evidently needed no such circuit for his coil, and had no such circuit in mind.

Furthermore, the meaning of the term "supplied circuit" is indicated by the following language in the specification:

"A is the armature of the main or generating dynamo, which supplies the energy to the main line or circuit leads, X, Y, directly or indirectly. In the present instance the lines, X, Y, are supposed to be constant-potential lines supplying translating devices of a character such, for instance, as railway motors, in multiple."

Counsel for defendant says:

"The supplied circuit is therefore circuit X, Y—the circuit upon which the translating devices are connected—and this supplied circuit is supplied by the energy of the generator 'directly or indirectly.' This means that part of the energy in that circuit is supplied without being first stored in the battery, while part is supplied directly from the battery after being first stored in the battery. The supplied circuit is that which, when the battery is discharging, is receiving current both from the generator and from the battery, and, while the battery is charging, is receiving only that portion of the generator current that is not being absorbed by the battery. The battery and the generator are two of the supplying sources for this supplied circuit, and, if there be a generator circuit, as distinguished from the generator itself (as there is in defendant's system), then the battery circuit and the generator circuit are two branch supplying circuits, together giving the energy to the working or supplied circuit."

In determining the construction of this claim, we think there is also much force in the argument of defendant that, as the booster is specified as reinforcing "the battery on discharge," the supplied circuit is the working circuit, whose energy at the time of discharge is being supplied in part by the generator and in part by the battery. The patent, therefore, fails to furnish any substantial support for the construction of the term "supplied circuit" contended for by complainant. We conclude that, when the patentee refers to the supplied circuit in claim 6, he means "the working circuit supplied" by the dynamo of claim 2, and that the two terms are used interchangeably and synonymously

as meaning the "main circuit," and as not including the generator circuit.

If, upon any construction of the invention, the sixth claim could be held to embrace the generator circuit, the fact that the sixth claim refers neither to the specifications or drawings might be material as permitting a broad scope to the patent. But here it does not appear that the patentee disclosed, or even knew of, the possibility of regulation by his coil in the generator circuit, or, if he may have known it through the teachings of the prior art, he ignored or repudiated and failed to claim it, because he believed his novel location to be superior to any other location. Therefore, in denial of infringement, we may well invoke the application of the settled rule, namely, that the patentee cannot cover what was neither inherent in his invention nor specified nor illustrated by him, because either it is not his invention or it was not disclosed to the public. That location of the regulation coil in the generator circuit is preferable to location in the working circuit is shown by the history of the art subsequent to the date of Mailloux's patent.

The complainant claimed, and the court below has found, that under the system of the patent in suit a dynamo having a flat characteristic—that is, one in which changes of current do not affect the voltage—may be used so that changes of current in the main circuit shall set in motion the compensating apparatus consisting of booster and regulating coil. It is contended that in the apparatus of the prior art the compensating apparatus could only be set in motion by dynamos having either a drooping or rising characteristic, meaning thereby those in which changes of current caused a decrease or increase of voltage, and that in order to operate said apparatus a change of voltage in the main dynamo was necessary. The following language from the specification of the patent in suit supports the view that the patentee had in mind the use of a generating dynamo having a flat characteristic. Referring to the drawings, he says:

"A is the armature of the main or generating dynamo, which supplies the energy to the main line or circuit leads, X, Y, directly or indirectly. In the present instance the lines X, Y, are supposed to be constant-potential lines supplying translating devices of a character such, for instance, as railway motors, in multiple."

The term "constant-potential" indicates that, whatever might be the fluctuations of current or variations in the rate of flow, the voltage or pressure or potential was constant. As the court below says:.

"In the system described in the specification of the Mailloux patent the voltage of the main generator at all times remains constant."

And claim 2 in suit supports this contention by the use of the expression therein "fluctuations of current."

. On the other hand, it is admitted that none of the drawings show a generator having a flat characteristic, and, except as above noted, there is no reference in terms to current regulation as such; the language otherwise used being "fluctuations of the electrical condition of the working circuit," or words of similar import. It seems to be admitted

or proved that this language is broad enough to cover regulations either by changes in voltage or changes in ampere or current changes.

We need not enter into a discussion of this branch of the case, because, upon a careful consideration of the entire patent, we are constrained to conclude that the real invention of the patentee consisted in so locating his coil that it would operate directly through fluctuations or changes of electrical condition in the main or working circuit. We are further of the opinion that this arrangement was an improvement on the prior art in its capacity for use with generators having a flat characteristic, and that defendant, by the location of its coil in the generator circuit, has secured the same advantages as those secured by the combination of the patent in suit. In view, however, of the failure of the patentee specifically to point out, illustrate, or broadly claim such location, we cannot so read it into the patent as to embrace defendant's construction. In fact, it may be said that defendant's construction is founded on a discovery not disclosed in the patent in suit, namely, that the change, which the patentee supposed could only be obtained by a location in the main or working circuit, might be obtained by a location in the generator circuit. In these circumstances the rule must be applied that, while a patentee is entitled to all the beneficial uses of his invention when the property or function is inherent in the invention or is described or claimed by him, yet that, where such change or function is neither described nor claimed, and especially where other changes are described and insisted on as essential and specifically claimed, it is significant proof that the change which has not been disclosed by him to the public is not his invention. Fastener Co. v. Kraetzer, 150 U. S. 111, 14 Sup. Ct. 48, 37 L. Ed. 1019; Goodyear Tire Co. v. Rubber Tire Co., 116 Fed. 375, 53 C. C. A. 583; Long v. Pope Mfg. Co., 75 Fed. 835, 21 C. C. A. 533; Wells v. Curtis, 66 Fed. 318, 13 C. C. A. 494; Bates v. Force Co. (C. C. A., 2d Circuit, Nov. 7, 1906) 149 Fed. 220.

The decree of the Circuit Court is affirmed, with costs.

NOTE.—Judge TOWNSEND heard argument, participated in consultations, and approved the conclusions above expressed. The case was assigned to him, and a large part of the above is a reproduction of what he wrote in preparation for final draft of opinion.