MIEHLE PRINTING PRESS & MFG. CO. v. WHITLOCK PRINTING
PRESS & MFG. CO.

(Circuit Court of Appeals, Second Circuit. April 13, 1915.)

No. 224.

1. PATENTS ⬧➾328—VALIDITY AND INFRINGEMENT—MECHANICAL MOVEMENT.
 The Hodgman patent, No. 664,151, for a mechanical movement designed
 for use on a Miehle printing press, covers a patentable improvement, and
 discloses invention; also *held* infringed.

2. PATENTS ⬧➾37—"PATENTABLE NOVELTY"—IMPROVEMENT OF EXISTING
 STRUCTURE.
 "Patentable novelty" is sometimes found in discovering what is the dif-
 ficulty with an existing structure, and what change in its elements will
 correct the difficulty, even though the means for introducing that ele-
 ment into the combination are old, and their adaptation to the new pur-
 pose involves no patentable novelty.
 [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 41–44; Dec. Dig.
 ⬧➾37.
 For other definitions, see Words and Phrases, First and Second Series,
 Novelty.]

Appeal from the District Court of the United States for the South-
ern District of New York.

This cause comes here on appeal from a decree of the District Court,
Southern District of New York, dismissing the bill. The suit was
brought for infringement of United States patent No. 664,151,
granted December 18, 1900 (application filed January 21, 1898), to
Willis K. Hodgman for a mechanical movement.

C. C. Linthicum, of Chicago, Ill., and Frederick L. Emery, of Bos-
ton, Mass., for appellant.

G. D. Seymour, of New Haven, Conn., O. E. Edwards, Jr., and
Louis W. Southgate, both of New York City, and Chas. T. Hawley,
of Holden, Mass., for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] Although the patented device is
entitled broadly as a "mechanical movement," the specification states
that it is particularly adapted for use in a certain type of printing
press; it can be sustained only as an improvement on the mechanism
of that type of printing press, as the actual movement of the part of
the mechanism with which it is concerned is effected by means well
known in the mechanic art.

The gist of the invention, as the patentee states, consists essentially
in the use of a plane-faced actuating-block and means for maintaining
it in proper position relative to the devices with which it intermittently
co-operates.

The type of printing press referred to is the Miehle press, United
States patent No. 322,309, July 14, 1885. The invention of this press
was a great advance in the art. It involved the motion back and forth
of the bed of the press—a very heavy part—at high speed. The move-

ment of the bed was accomplished by a toothed wheel, which always moved clockwise and engaged alternately with racks in the bed, above and below the wheel. The heavy bed acquired momentum which had to be gradually reduced, stopped, and the direction of movement reversed. This was accomplished by a stud on the toothed wheel, called a reversing member, which engaged alternately with guideways at each end of the machine. These guideways were vertical; when the stud was in one of them it bore against one side of the guideway, gradually checking the movement of the bed to which the guideway was attached and finally initiating a movement of the same in a reverse direction, just as the teeth of the gear wheel engaged with the rack to continue the reverse motion. As no question arises as to operation of the Miehle press itself, further details of its structure seem unnecessary. The claim of the patent in suit, on which complainant relies reads as follows:

"3. In a reversing mechanism, a reciprocating member, relatively movable shoes carried thereby to form a guideway, a reversing member movable in a circular path and having *parallel plane bearing-faces*, to enter said guideway intermittently and co-operate with the shoes, *means to position the bearing-faces* of said reversing member to enter the guideway and means to effect relative movement of the shoes to permit the entrance to and departure of the reversing member from the guideway."

Some of the elements of this claim are Miehle's; such of them as indicate Hodgman's improvement we have italicized. Every one agrees that Miehle made a highly meritorious invention; it revolutionized the art and has stood the test of time. Like every such invention involving a complicated structure it was, of course, susceptible of improvement; whether any particular improvement would itself constitute patentable invention is an open question, to be decided upon consideration of such improvement.

Miehle secured reversal of motion of heavy parts, without jar or disturbance, by means of a stud on the gear wheel, the wheel which alternately meshed with upper and lower rack. That stud (during a half-revolution of the wheel) passed through a guideway; it then (during two revolutions) passed unguided through the air and entered another guideway through which it passed (during a half revolution).

Miehle's stud was round and had a cylindrical sleeve on it to reduce friction. This had defects; or perhaps, as it may better be expressed, it was not as efficient as it might be. Because stud and sleeve were cylindrical, the sleeve made line contact only with the guide with which it engaged. This increased wear and tear; not only would the roller itself wear, but it tended to wear the guides. This necessitated the very best workmanship and materials. Moreover, any jarring of the press would cause the roller to jump across from one guide to the other, which was undesirable.

Hodgman, while retaining the Miehle stud with its two guideways and a flight through the air between one guideway and the other, has substituted for the cylindrical sleeve a square side block, presenting long parallel sides to travel in contact with the walls of the guideways. Thus guides and block will wear longer—the block can be made of softer material and more cheaply than a roller. We do not understand

that any one contends that the Miehle press is not at all improved by the use of a square-sided block; certainly defendant, which uses such a block, cannot so contend. Inasmuch as the block is constantly leaving one guideway and entering another, it must always—especially when in the air and not controlled by guides—be maintained in position, top side up, without any rotative motion whatsoever about its own axis.

No one disputes the proposition that it was common knowledge that a square-sided engagement with a guide would have the advantages above pointed out.

The defendant contends that it was "obvious" that the frictional roller of Miehle did not provide satisfactory wearing surfaces; that it was "obvious" that this was a defect which should be eliminated; that it was "obvious" that it would be eliminated if a square-sided block were substituted for the roller, the stud and guideways remaining substantially the same as before.

If this be so then Judge Mayer was correct, and it is not necessary to add anything to his discussion of the mechanics of the case, because the only thing left for Hodgman to do with these "obvious" suggestions before him would be to secure right-side-up position for his squared block and two well-known mechanical devices (the "planetary gear" and the "parallel links") were available to secure it; given the appreciation of the defect and the realization that the square-sided block would remedy it, the details of the structure would seem to be within the range of the ordinary skilled mechanic, who would use either the planetary gear, as Hodgman did, or the parallel links, as defendant does.

We must admit that, looking at the situation as laymen, unskilled in mechanics, and enlightened by the situation as it is *after* the event, we would be inclined to agree with defendant in its statement of what was obvious before Hodgman appeared. But in our opinion the record does not indicate that this is all there is to Hodgman's improvement. Past experience has shown us that what may seem obvious after disclosure was not obvious before, even to persons skilled in the art. Brunswick Balke Co. v. Thum, 111 Fed. 904, 50 C. C. A. 61; Schenck v. Singer Mfg. Co., 77 Fed. 841, 23 C. C. A. 494.

If the defect of line engagement in the Miehle press were so obvious, it must have been perceived soon after his presses began to be used. It must be assumed that defects of that sort, when they can be rectified without much expense, are corrected by improvements whenever the method of improving them is obvious. One would suppose that, soon after the Miehle press got into use, its defect of line engagement would be apparent, and that the skilled persons who had devised it and were operating it would be prompt to improve it.

But this is not what happened; Miehle's patent was issued in 1885, but Hodgman's substitute of the square-sided block on the Miehle stud, moving sometimes in guideways, sometimes free, does not appear until his application is filed in 1898. Why was it that the art waited 14 years before it modified the Miehle engaging stud by covering it with a square block, instead of a roller? Two modifications appeared during that period, Wood in 1892, Huson in 1896; but, although both used

a square block, in neither did the block leave and enter successive guideways; in both the block, or what is its equivalent, is always in a guideway. Their devices depart further from Miehle than does Hodgman. They may be better or worse than Hodgman's change. Hodgman's change is the simpler, and if it were as obvious, as defendant contends, why did the more complicated changes of Wood and Huson first appear? The record indicates, as it did in the cases of the sewing machine treadle and the bowling alley ball return way, that there is something about the improvement of Hodgman which marks it as an expedient— simple, no doubt—but not naturally suggesting itself to the man skilled in the art.

[2] Patentable novelty is sometimes found in discovering what is the difficulty with an existing structure and what change in its elements will correct the difficulty, even though the *means* for introducing that element into the combination are old and their adaptation to the new purpose involves no patentable novelty. So in this case, if Hodgman was the first one to perceive that the roller sleeve would handicap the Miehle structure and that a block sleeve on the crank pin entering and leaving guideways would relieve the handicap, if it took him years to find this out, and if in the meantime skilled persons who wanted to make Miehle's structure a success suggested neither the difficulty nor the remedy, we are inclined to think that for his particular improvement Hodgman was entitled to a patent.

It is contended that this argument is without weight, because the Miehle Company, which has owned the Hodgman patent for some time, does not incorporate his improvement in the machines which it makes and sells. The Hodgman patent became the property first of the Huber Company, and afterwards of its successor, the Huber-Hodgman Company. During the period of their ownership between 400 and 500 printing presses involving Hodgman's invention were made and sold, a gross business of about $1,500,000, covering a period of 10 years. Then the Miehle Company bought out the Huber-Hodgman Company's business, taking this patent and others with the rest of the assets. What business reasons have influenced the Miehle Company since then to make and market its presses without incorporating the Hodgman squared block we do not know. Possibly some other changes in the old structure are found to be more economical or more efficient; that art may have progressed far beyond Miehle and Hodgman; as to that the record is silent. But it is significant that defendant does not use the round sleeve of Miehle, nor the continuous guiding of Wood or Huson, but the identical square-sided block of Hodgman, moving partly in guideways, partly not so moving, and held always in proper position for ingress into a guideway. Miehle's patent has expired; the cylindrical sleeve on the round stud is free for defendant to use; if Hodgman's device is not an improvement of Miehle's there is no apparent reason why defendant should use it; Miehle's will answer every purpose. Nevertheless defendant does use Hodgman's device, and has been willing to go to the expense of a lawsuit to maintain its right to do so, when it would have cost it nothing to use the old device of Miehle's expired patent.

In our opinion, Hodgman's change was an improvement, and, for the reasons above indicated, it was a patentable improvement. Infringement is plain; the claim does not confine the patentee to any particular "means" for maintaining the square-sided block in position.

The decree is reversed, with costs of this appeal, and cause remanded, with instructions to decree in conformity with this opinion.