## CARNES ARTIFICIAL LIMB CO. v. DILWORTH ARM CO.

### (District Court, D. Connecticut. June 16, 1921.)

#### No. 1519.

1. **Patents ⊚⇒328—760,102, claims 1 and 4, for mechanical artificial arm and hand, held valid and infringed.**

   The Carnes patent, No. 760,102, for an artificial mechanical arm and hand, claims 1 and 4, *held* not anticipated, valid, and infringed.

2. **Patents ⊚⇒64—Patent for inoperative device not anticipation.**

   A patent for a device, which is inoperative or fails to accomplish the desired end, is not an anticipation of one which successfully accomplishes it.

3. **Patents ⊚⇒26 (2)—New combination of old elements may constitute invention.**

   That some of the elements of a combination are old does not negative invention, where the combination is new, and produces a new and practical device.

4. **Patents ⊚⇒328—999,484, claim 1, for artificial arm, held valid and infringed.**

   The Carnes patent, No. 999,484, for an artificial arm, is for a primary invention, and entitled to a broad range of equivalents. Claim 1 also *held* infringed.

5. **Patents ⊚⇒167.(2)—Words "substantially as set forth" not limitation to precise construction shown.**

   The use of the words "substantially as set forth" do not limit a patentee to the precise construction shown, nor exclude infringement by mechanical equivalents.

6. **Words and phrases—"Mechanical arm."**

   The term "mechanical arm" is understood in the artificial limb trade as meaning an arm provided with fingers which can be moved by some mechanical contrivance, together with mechanism for rotating the wrist, simulating, as nearly as possible the motion of the human wrist, hand, and fingers.

In Equity. Suit by the Carnes Artificial Limb Company against the Dilworth Arm Company. Decree for plaintiff.

Harrie E. Hart, of Hartford, Conn., and J. C. & H. M. Sturgeon, of Erie, Pa., for plaintiff.

Arthur L. Shipman, of Hartford, Conn., for defendant.

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMAS, District Judge. This is a suit for an alleged infringement of claims 1 and 4 of patent No. 760,102, dated May 17, 1904, and of claim 1 of patent No. 999,484, dated August 1, 1911, both issued to William T. Carnes. Title to both patents is now vested in plaintiff company. The defenses are noninfringement as to both patents and anticipations voiding the first patent.

[1, 6] The inventions forming the subject-matter of the patents in suit are for what are known in the artificial limb trade as "mechanical" arms, adapted for the use of individuals who have lost either or both arms, and where amputation has occurred either above or below the elbow joint. The term "mechanical" arm is understood in the trade as meaning an arm provided with fingers which can be moved by some mechanical contrivance, together with mechanism for rotating the wrist, simulating, as nearly as possible, the action of the human wrist, hand, and fingers.

The invention disclosed in the first patent, as stated in the specification, relates to—

"artificial limbs, and has for its object the construction of an artificial hand provided with mechanism so constructed and combined that the fingers of the hand can be operated either with or without the assistance of the wearer's other hand, and with the joints of the wrist and fingers so made that they present no shoulders or corners visible through a glove worn on said hand, and also with a wrist joint so adjustable that it can be rotated on its axis and be secured at any desired point to which it may be rotated."

This structure comprises a forearm section, a wrist section, which swivels or rotates on the forearm section, and a hand section, which is hinged to the wrist section.

The wrist section is supported on the forearm section through a plate, which is secured thereto and has a nipple, which extends through the plate on the forearm into a chamber in the end of the forearm, and is there secured in place. The nipple constitutes the swiveling support having a bearing in the plate. In order to hold the wrist section in any position to which it may be turned, a latch is provided in the wrist section, which has a projection engaging hole in the plate. This makes it possible to move the hand, which is carried by the wrist section, so that the palm is up or down or in intermediate positions, and to lock the hand in any of those positions.

The hand section is hinged to the wrist section, and its end approximates the shape of the human hand and wrist, and fits into the socket of the wrist section. It has notches which are engaged by a catch, so that the hand member may be adjusted on its hinge joint into any one of several positions, and there held by the engagement of the catch with one of the notches.

Fingers are hinged to the hand section, and each finger is connected by a link with a crank shaft, which is rotated by means of the pull of the cord attached through links, with the rack bar meshing with a pinion on the crank shaft. The rotation of the crank shaft causes the fingers to move alternatively to closed and open positions.

The cord is attached to a harness, which goes about the shoulders of the wearer, so that by the action of the shoulders tension is exert-

ed on the cord. The cord, and the link to which it is attached, extend through the hand member, wrist member, and forearm member. The thumb is mounted in the hand section on a pivotal support, and is held in a forward position by a spring.

The peculiar utilities of the mechanically moved fingers and the yielding thumb are explained by the inventor in his testimony as follows:

"The fingers, by being closed, allow one to hold an object in such a manner that it will not yield when the thumb is pressing against the object that is being held; it gives a yielding grip, that will hold and take up the lost motion that would take place by a positive mechanism. The thumb will spring back and allow the fingers to become closed, so that the object will be held. The spring tension of the thumb—if it wasn't there, if the thumb was made rigid, the wearer, in gripping a street car handle, if the cord that operates the mechanism should break in the operation of closing the hand, he would be locked fast, without the spring in the thumb to let it loose; with the spring in the thumb, the wearer could wrench his hand loose and get away without any danger."

So that, in the first patent in suit, the swivel and hinge action of the wrist and hand member are accomplished by the use of the wearer's other hand; first tripping the catches and then moving the wrist or hand to the desired position, and permitting the catches to re-engage.

Plaintiff charges infringement of claims 1 and 4 of the first patent, which are as follows:

(1) "The combination, in an artificial arm, of an artificial hand secured thereto, swivel and hinged joints intermediate of the elbow joint and the artificial hand, fingers hinged thereto, mechanism in said artificial hand adapted to open and close the fingers thereof, a thumb member pivoted to the hand body, and means for yieldingly holding said thumb member in a normally closed position in opposition to the fingers, substantially as and for the purpose set forth."

(4) "In an artificial arm and hand, the combination of a swivel joint in one part of the wrist portion, latch or stop mechanism adapted to secure said swivel joint in a position desired, a hinged socket joint in the wrist portion of said artificial hand below said swivel joint, latch or stop mechanism for retaining said hinged socket joint in a desired position, a hand body, mechanism therein for opening and closing the fingers of said hand, fingers pivoted to said hand body by means of hinged socket joints, and means for connecting the actuating mechanism of the fingers with the body of the wearer, whereby the same may be operated, substantially as and for the purpose set forth."

We will first dispose of the prior art cited against the first patent. Seven patents were set forth in the answer, and three additional were admitted in evidence. It is unnecessary to discuss them in detail. All show one form or another of an artificial "mechanical" arm. The earliest was dated in 1853, and the latest in 1867. This art, relied upon by defendant to anticipate plaintiff's invention, covers a period of 14 years, and ended 37 years prior to the date of plaintiff's first patent, and the latest of these patents expired 20 years before Carnes entered the field.

It appears from the evidence that Carnes, having lost his own arm in 1902 was prompted to and did carefully investigate the market for an artificial arm. In the course of that investigation, however, he made no examination of patents in the Patent Office, and he had never seen any one of the patented arms described in the prior patents in use,

and had never heard of any of them being used. It is also in evidence that Dilworth, who lost a foot in 1908, was prompted by that unfortunate accident to carefully examine the market, and he, too, thoroughly investigated the artificial arm business. He explored the field, examined all devices available, looked over all the patents in the art, including all patents cited here, and testified that he never saw or knew of an arm made in accordance with any one of the prior patents, except one in Worcester, Mass., which was not in use.

[2] From this, as well as from other testimony respecting the patents of the prior art, and an examination of the patents themselves, the conclusion is that the prior art patents were either inoperative or impractical for the purposes intended. Respecting such a finding the Circuit Court of Appeals for the Fourth Circuit, in Farmers' Mfg. Co. v. Spruks Mfg. Co., 127 Fed. 691, 62 C. C. A. 447, said:

"It cannot be said that a patent for a device, which fails to accomplish the desired end, is an anticipation of one which successfully accomplishes it."

See Cimiotti Unhairing Co. v. American Unhairing Mach. Co., 115 Fed. 498, 53 C. C. A. 230 (C. C. A. 2d Cir.).

Every feature of the Carnes arm has been carefully designed to make it a practical structure. Positive mechanism is provided for moving the fingers. No mechanism is provided for moving the thumb, but the thumb is held in a forward position by a spring. Consequently, as the fingers are closed upon the thumb, a tight grip on articles can be secured, because of the resilient mounting of the thumb.

Carnes provides for wear in the mechanical parts, and for lost motion in the hinged joints of the fingers, by providing the resiliently held thumb. This is a feature of practical importance. Another feature of extreme importance, so far as the yieldingly held thumb is concerned, as was explained by Carnes, supra, is the ability of the user, once having gripped an article, to immediately release himself from it by pressing against the thumb, which yields, so that a handle of a trolley car, for example, once gripped, can be released quickly by pressing against the thumb.

The value of the structures of the prior patents as anticipations is to be determined by the evidence in this case, which shows conclusively that every one of the patents relied upon by defendant is either inoperative, or impractical, or both, to meet the demands of the present-day requirements. Obviously, therefore, they are not anticipations of the claims of the first patent in suit, which recite complete organization of parts co-operating to produce a thoroughly practical mechanical arm.

This situation falls within the rule stated by the Supreme Court of the United States in Loom Co. v. Higgins et al., 105 U. S. 580, on page 591 (26 L. Ed. 1177), where the court, speaking by Mr. Justice Bradley, said:

"Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known ele-

ments produce a new and beneficial result, never attained before, it is evidence of invention."

See, also, Baltzley v. Spengler Loomis Co. (C. C. A.) 262 Fed. 423; Miehle Printing Press & M. Co. v. Whitlock P. P. & M. Co., 223 Fed. 647, 650, 139 C. C. A. 201.

[3] In view of the facts here disclosed, a general résumé of the cases applicable to this discussion sustains the doctrine that, in order to establish anticipation, it is not sufficient to pick out one part of a patented device from one prior patent, another part from some other, and still a third from a third prior patent, and then say that it is not invention to bring those several parts together, especially when the patentee is the first to conceive of so doing, and by so doing has produced a practical, operative device and has discovered "what is the difficulty with an existing structure, and what change in its elements will correct the difficulty, even though the means for introducing that element into the combination are old, and their adaptation to the new purpose involves no patentable novelty," as Judge Lacombe held in Miehle Printing Press & Mfg. Co. v. Whitlock Printing Press & Mfg. Co., 223 Fed. 647, supra, on page 650, 139 C. C. A. 201, on page 204.

Defendant's counsel argues that the claims in suit are open to the objection that they are for aggregations; but an examination of plaintiff's arm is sufficient to show that in a very small space, where lightness, rigidity, and strength are required, the inventor has combined all mechanical structures necessary to the complete manipulation of the hand and arm, therein embodying the swiveling or rotating action of the wrist, the hinging action of the hand and the fingers connected therewith.

In Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 432, 38 Sup. Ct. 547, 549 (62 L. Ed. 1196), the Supreme Court said:

"Generally speaking, a combination of old elements, in order to be patentable, must produce by their joint action a novel and useful result, or an old result in a more advantageous way."

But here all elements were not old. A yieldingly supported thumb in juxtaposition to the mechanically closing fingers was new, the mechanism for closing the fingers as recited in the first claim of the first patent in suit was new, and all parts recited in this claim are parts necessary to a complete operative mechanism, and all of these parts cooperate with one another to produce a new and beneficial result.

The complete structure recited in claim 4 is new as to some of its parts. The hinging and latching of the wrist is new. Hence the structure is not a combination of old elements, but a combination of old and new elements. Furthermore, in a complete arm having motion approximating the motion of the human arm, the swiveling action of the wrist and the latching and hinging action of the hand are essential and co-operative features, because combined with these motions there is the mechanism for operating the hinged fingers, which are on the swiveled wrist and hinged hand, and the means for connecting this mechanism with the body of the wearer, in order that motions of the parts of the body will actuate the finger-closing mechanism. All of

these parts had to be combined and properly co-ordinated, in order that all necessary motions of the parts of the artificial limb could be had, without the motion of one part interfering with the motion of other parts.

In the Grinnell Washing Machine Case, supra, the inventor had taken a washing machine which was old, and attached to it a wringer and a motor, both of which were old, and by a system or combination of gears drove both the washing machine and the wringer from the motor, somewhat the same as in factories where several machines of different characters are grouped together, connected to and driven from a line shaft. That case presents an example of an aggregation. The instant case presents an example of a combination.

In Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 498, 19 Sup. Ct. 641, 643 (43 L. Ed. 1058), the rule was again tersely stated:

"Where a combination of old devices produces a new result, such combination is doubtless patentable; but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368; Reckendorfer v. Faber, 92 U. S. 347, 356; Phillips v. Detroit, 111 U. S. 604; Brinkerhoff v. Aloe, 146 U. S. 515, 517; Palmer v. Corning, 156 U. S. 342, 345; Richards v. Chase Elevator Co., 158 U. S. 299."

The claim that the patent is void as an aggregation is untenable.

Dilworth concedes that his structure contains all of the elements of the first claim, except "a thumb member pivoted to the hand body." In his testimony he admits that the distinction between the construction of his arm, equipped with the thumb, and the structure as set forth in claim 1, is that the thumb of defendant's arm, instead of being pivoted directly to the hand body, is pivoted to a member which is then mounted in and connected to the hand body. So that the issue of infringement as to this claim is reduced to the question of whether or not the defendant has escaped infringement by pivoting his thumb to a removable member, which is secured to the hand member by a threaded pin, which is screwed into a metal opening and thus securely attached to the hand member. In my opinion the threaded screw amounts to a pivoting.

Defendant seeks to escape infringement by claiming that the thumb is screwed into the hand body, and that it rests on a "rotar base." The claim is not concerned with how the result is accomplished, but is only concerned with providing a thumb which is pivotally mounted on the hand, and that is what defendant has. Defendant's method of mounting his thumb does not change the function of the pivoted thumb member, or its mode of operation, and is obviously a subterfuge, resorted to for the purpose of being able to point out some difference between defendant's structure and the precise language of the claim.

With Dilworth's admission that his structure contains all of the other elements of claim 1 of the first patent in suit, precisely as described in the claim, it is entirely obvious that his structure also contains "a thumb member pivoted to the hand body," precisely as de-

scribed in the claim. In my opinion, infringement of claim 1 is established by the testimony of the defendant's witness Dilworth.

As to claim 4 the issue of infringement has been made definite by Dilworth's testimony. On the direct examination, after reading the fourth claim in full, he testified as follows:

"We have all of the elements but the fingers hinged in socket joints"

—and later on testified that, so far as his familiarity with the art was concerned, the combination of elements recited in claim 4 had never been brought together until Carnes did it, and that Carnes was the first to accomplish it.

Dilworth appropriated the complete combination of claim 4, using every element, and those elements he has arranged, co-ordinated, and combined precisely as set forth in the claim; but he now seeks to avoid the charge of infringement by saying that he does not have "hinged socket joints" for his fingers, but some other kind of a joint —the other kind of a joint being devised for the purpose of producing as smooth a joint as possible. There is no evidence indicating that the phrase "hinged socket joints" in this claim was forced into the claim during the prosecution of the application as a definite limitation. Under the rules of interpretation, Carnes is entitled to a reasonable range of equivalents, and, so far as this claim is concerned, all that is necessary in that complete combination is that the fingers shall be hinged to the hand body. Carnes mentioned his preferred method of hinging; but it is not thought that defendant can take advantage of that complete combination, which he definitely states was first brought together by Carnes, and then avoid the charge of infringement by a change of an immaterial element. True, he says that his type of joint does not make as good a finish as plaintiff's type of joint; but infringement cannot be avoided by making a slight change in a patented structure, which, while utilizing every functional feature of the claimed invention, renders the apparatus less perfect in its operation. The defendant, therefore, infringes claim 4 of the first patent in suit.

[4] The second patent, No. 999,484, is dated August 1, 1911. Only one claim is in issue, and it reads as follows: .

"In an artificial arm, the combination of a forearm member, a sleeve member to be secured to the upper arm, a wrist member secured to the forearm member by a swivel joint, gear mechanism in said joint for rotating said wrist member upon the forearm member, rod mechanism operatively connected with and extending from said gear mechanism to the upper end of the forearm member, a rod secured to said sleeve and extending downward to a pivot on the upper end of the forearm member, and an offset in said rod pivoted to the upper end of the rod in the forearm member, whereby the bending of the elbow of the wearer operates said gearing to rotate the wrist member upon the forearm member, substantially as set forth."

The validity of this claim is conceded, so that the only question to be decided is whether defendant infringes. The claim recites a structure made up of parts combined with the greatest ingenuity in order to produce the result of giving to the public an arm with which the motions of the human arm are closely simulated.

The objects, inter alia, of the invention, as stated in the specification, "are to produce an artificial arm and hand particularly adapted to be fitted to the forearm of the wearer whose elbow joint is in its normal operative condition, and relates to improvements for operating and controlling the rotation of the wrist of the hand upon the forearm; also to improvements in the finger operating mechanism, and to other improvements in the hand construction hereinafter described;" and the patentee also says that this patent is designed to be an improvement on the earlier patent, No. 760,102.

Plaintiff's structure shows bevel gears, through which the bending of the elbow produces a rotary or swiveling action of the wrist member on the forearm; while defendant's structure shows a belt running over a sheave pulley or fulcrum pulley, and through which the same result is obtained by the bending of the elbow. It will be noted that the claim calls for "gear mechanism" for rotating the wrist member upon the forearm member, so that the only question is whether the pulley mechanism operating the wrist movement is an infringement upon the "gear mechanism."

Carnes developed a swiveling action of the wrist member by a movement of the elbow joint. He accomplished this by providing at the elbow joint a crank mechanism, which produced a rectilinear movement of a rod positioned on the forearm. He then introduced in the wrist member a gear mechanism to translate that rectilinear motion of the rod into a rotary motion of the wrist member. The gear mechanism, which he illustrates and describes, is a bevel gear mechanism. Carnes claims that the "gear mechanism" in claim 1 was intended to cover the pulley and cord, as well as the bevel gears, and that the bevel gearing adopted by him is one type of gear mechanism suitable for use in translating the rectilinear motion of the rod on the forearm member to the rotary motion of the wrist member. He further claims that defendant's belt gearing is another suitable gear mechanism to produce that same translation from rectilinear to rotary motion, and that, in the mechanical art, belt drives are used interchangeably with gear drives, and cites as the most familiar example of belt gearing the drilling machine. The plaintiff further claims that, where the belt gear mechanism is used, it is commonly referred to as a quarter turn belt; that is to say, there is a vertical axis on which one pulley is mounted, a horizontal axis on which another pulley is mounted, and there are two intermediate pulleys about which the belt runs as it passes from the vertical to the horizontal pulley, and that such is the structure that the defendant has adopted, to wit, a belt gear mechanism in place of plaintiff's bevel gear mechanism.

Defendant concedes that this claim is valid, but insists that it should be limited to the precise construction which it shows and describes, and that it cannot be construed freely to cover any mechanism in order to turn the wrist. If the claim should be strictly construed, I would conclude that the belt gearing is not an infringement on bevel gears. So that the question is: What construction must be given the claim, in view of all the evidence?

Counsel for plaintiff maintains that Carnes was a "pioneer" in the construction of a practical mechanical arm, and that he is therefore entitled, under the law, to have his claims liberally construed, and that every doubt must be resolved in such manner as to support his patents; but I cannot agree that this invention is within the domain of "pioneer" inventions. True, he produced the first practical mechanical arm; but that does not necessarily constitute him a "pioneer" inventor, as that term is used in the patent law.

Mr. Justice Brown, in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, on page 561, 18 Sup. Ct. 707, on page 718 (42 L. Ed. 1136), in speaking of "pioneer" inventions, said:

"This word, although used somewhat loosely, is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before"

—and then follow the references to the sewing machine, telegraph, and telephone patents to Howe, Morse, and Bell as conspicuous examples of "pioneer" patents.

While it seems clear that Carnes was not a pioneer in the strict sense of the word, nevertheless it seems equally clear that his invention rose to the dignity of a primary invention, as he was the first to give to the world a practical and operative mechanical arm with the manifest advantages of simulating the action and motions of the human hand, fingers, and wrist, and that his invention is therefore deserving of recognition and "entitles the patent to a liberality of construction which would not be accorded to an ordinary improvement upon prior devices," as was said by Mr. Justice Brown, on page 562 of 170 U. S., on page 718 of 18 Sup. Ct. (42 L. Ed. 1136), in the Westinghouse Case, supra.

Mr. Justice Blatchford, in Morley Machine Co. v. Lancaster, 129 U. S. 263, on page 273, 9 Sup. Ct. 299, on page 302 (32 L. Ed. 715), said:

"Where an invention is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements, although the subsequent machine may contain improvements in the separate mechanisms which go to make up the machine."

In that case it appeared that Morley was the first person who succeeded in producing an automatic machine for sewing buttons of the kind in question upon fabrics, and the court there held that he was entitled to a liberal construction of the claims of his patent. With forceful effect one may apply to this feature of the case what Judge Hough said, speaking for the Circuit Court of Appeals for the Second Circuit in Homer Brooke Glass Co. v. Hartford-Fairmont Co., 262 Fed. 427, on page 430:

"Of such an invention we have said that, when it 'inaugurates a new industry,' courts should be 'zealous so to construe the claims as to give validity to what is a meritorious invention.' Auto Vacuum, etc., Co. v. Sexton Co., 239

Fed. 900, 153 C. C. A. 26. It is also true that, under restrictions not necessary to dwell upon, a patentee is entitled to the benefit of properties or functions inherent in his invention whether fully comprehended by him at the date of disclosure or not. Electric, etc., Co. v. Gould, etc., Co., 158 Fed. 610, 85 C. C. A. 432; Van Epps v. United, etc., Co., 143 Fed. 869, 75 C. A. 77. Whether Mr. Brooke's invention is of such a primary nature as to merit the application of the word 'pioneer,' we shall assume, but not decide; for whatever the proper adjective applicable to this patent, the legal rule of construction is the same. Outlook, etc., Co. v. General, etc., Co., 239 Fed. 878, 153 C. C. A. 5, et seq."

That rule is particularly apposite to this discussion. The evidence is conclusive that Carnes' invention "inaugurated a new industry" in mechanical arms and that it was "a meritorious invention."

[5] But defendant urges that by using the words "substantially as set forth" the patentee limited the construction to the precise construction shown in the drawings, to wit, bevel gears. It will be noted, however, that in the first claim the patentee uses the words "gear mechanism" only. These words seem to me to be general respecting the mechanism to be used for transmitting motion. But in the second claim he uses the words "bevel gear mechanism." These words are specific and call for the specific device shown in the drawings. Moreover, belt gearing is a kind of mechanism used for the purpose of transmitting motion, and that is what the plaintiff and defendant both do. They transmit a rectilinear motion into a rotating motion.

This contention made by defendant is answered by the Supreme Court in Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586, where the matter is fully discussed, and Mr. Justice Brown laid down the rule at page 399 of 180 U. S., at page 416 of 21 Sup. Ct. (45 L. Ed. 586), in the following words:

"While the words 'substantially as described or set forth' are not absolutely meaningless, they do not limit the patentee to the exact mechanism described in his specification, or prevent recovery against infringers who have adapted mechanical equivalents for such mechanism. In determining the range of such equivalents, much depends upon the question whether the machine is a primary one, or whether the patent covers some novel feature introduced into an old machine. It is difficult to say exactly what effect should be given to these words. In one sense it may be said that no device can be adjudged an infringement that does not substantially correspond with the patent. But another construction, which would limit these words to the exact mechanism described in the patent, would be so obviously unjust that no court could be expected to adopt it."

Furthermore, the patentee is entitled to a broad range of equivalents in view of the primary or meritorious character of the invention. In Miller v. Eagle Mfg. Co., 151 U. S. 186, on page 207, 14 Sup. Ct. 310, on page 318 (38 L. Ed. 121), Mr. Justice Jackson, in discussing this proposition, laid down the rule as follows:

"The range of equivalents depends upon the extent and nature of the invention. If the invention is broad or primary in its character, the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions."

In this connection what Judge Hough further said on page 430, in the Homer Brooke Glass Case, supra, is pertinent:

"It is always necessary, even after granting the widest range of equivalents, to find as a matter of fact that what the defendant has done is the invention of the plaintiff 'substantially as described.' The range of decision, the limits imposed by law on the triers. of the facts, are indicated by the word 'substantially'; an infringer may easily substantially imitate a big thing —i. e., a deeply rooted and wide-spreading inventive thought; whereas, without 'Chinese copying,' imitation of a little thing is oftentimes difficult."

So, as I view it, the conclusion naturally follows, in view of the evidence in the instant case and the rules of law applicable thereto, that the limitation urged by the defendant is not imposed upon the claim by the use of the words "substantially as set forth."

Concluding, as I do, that Carnes discloses a meritorious invention, a broad or primary invention, he is entitled to a liberal construction of his claim and a broad range of equivalents. It follows, therefore, that the defendant infringes the first claim of the second patent in suit.

Let a decree be entered for plaintiff, with costs to abide the event. So ordered.