Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff is the assignee of patent rights evidenced by Letters Patent #1140469 granted to it under the following state of facts:
On May 1, 1912, Andreas P. Lundin filed his application for a patent relating to new and useful “ Improvements in Boats.” Prior to the time the application matured into a patent Lundin assigned the same to plaintiff, and on May 25, 1915, letters patent were granted to the plaintiff.
This suit alleges infringement of plaintiff’s rights. Just compensation is claimed under the act of June 25, 1910, as amended by the act of July 1,1918 (40 Stat. 705).
Lundin’s invention, while broadly stated as new and useful “ Improvements in Boats ”, was, as his specifications and claims disclose, primarily directed to lifeboats. His form of construction indicative of his conception was centered upon accomplishing the construction of lifeboats which would obviate the deficiencies of existing boats and substitute a boat possessing superior characteristics of stability, buoyancy, capacity, and safety, and by simplicity in operation economize space on the decks of vessels.
Inasmuch as only claims 2 and 4 of the patent are involved herein, we confine our discussions to the form of boat construction therein claimed, without adverting to the three additional claims except to say that they do disclose the exercise of invention. Claims 2 and 4 relate to what is called the hull of the boat. They are substantially alike, and we quote them in full:
“ 2. A boat comprising a rigid metallic shell comprising rounded fore and aft sections and an amidship section having a well polygonal in conformation, provided with seats and having flat outer sides, supplementary sides of highly *782 buoyant material connected to the amidship section outer sides of the metallic shell to round out the contour of the boat, add to its stability and serve as fenders.”
“ 4. A boat embodying a rigid metallic shell comprising rounded fore and aft sections and an amidship section provided with a well polygonal in conformation and having flat sides, and supplementary sides composed of balsa wood having its pores closed against the admission of water and attached to said flat outer sides to round out the. contour of the boat, add to its stability and serve as fenders.”
Figures 3 and 4 of the specifications illustrate the form of construction embodied in the claim. They are as follows:

Quoting from the specifications, the inventor says:
“A designates a shell of metal or other suitable material having a substantially flat bottom a and provided with a well or cockpit B, * * *. As illustrated, the well B is rectangular in configuration and is provided at the extreme upper edge with cross seats E and marginal seats F which, together with the metallic flow of the well, assist in reinforcing the shell to form a structure of great strength and rigidity. * * * Another feature of my invention is the provision of a rigid metallic shell having flat sides with what I shall term ‘ supplementary sides ’ of highly buoyant material and preferably of balsa wood. * * * These supplementary sides * * * will not only materially add to *783 the strength and stability of the lifeboat but will serve as fenders or guards to prevent injury to the boat in the event that it be bumped against the vessel in launching. * * * and round out the contour of the boat.”
The Government entered into four contracts with the C. M. Lane Life Boat Company to manufacture and furnish a total of 29 lifeboats. Seventeen were for the TJ.S.S. Grant (findings VIII and X) and twelve for miscellaneous vessels (finding XVII). As to the 17 boats, the defendant interposes a defense grounded on noninfringement as a fact, and the invalidity of the claims. As to the other 12, the defendant relies upon the invalidity of the claims.
It is of course conceded that the burden of establishing invalidity rests upon the defendant. A nmnber of prior art patents have been introduced. They antedate the present patent by many years and exhibit the fact that inventors have been interested in the art since at least 1839. The record establishes, and the court finds as a fact (finding XXV), that the British patent to Kjellevold #9275 is the nearest approach in identity of construction to the patent in suit. This patent, however, neither in its specifications nor claims discloses Lundin’s conception or duplicates his structure in detail. The similarity in the identical elements entering into each shows that while Kjellevold was endeavoring for a boat of stability and safety, staunch and efficient, he did not have in mind a form of construction embodying not only all his ideas, but the additional ones of so designing a boat that it would economize deck space, minimize the dangers of collision in launching, and retain maximum capacity as to loads. Kjellevold omitted from his detail of construction the vital dimensions, elements, and contours existent in Lundin’s boat that gave to the latter these mubh sought-for qualities. Lundin, it is true, utilized some of the elements which Kjellevold used, but he advanced over the latter; with the use of additional elements employed in new and novel arrangement Lundin created a lifeboat available for use in a way distinctly different from the Kjellevold boat, a use practical, operative, and valuable. The Kjelle-vold boat disclosed no well polygonal in conformation, a pertin&nt detail of construction in the Lundin boat, and, *784 while within itself old in the art, when considered in combination with the additional elements served to maintain maximum carrying capacity, rigidity, and strength, and was essential in relationship to the air chambers located under the same. The prior art patent relied upon utilized unprotected air chambers located longitudinally the boat sides. Obviously they were unprotected by supplementary sides and exposed to the dangers of collisions in launching and otherwise, and what is more, the Kjellevold boat possessed no characteristic hull construction enabling the stacking of one boat upon the other. Kjellevold was seeking a boat to withstand the hazards of the sea and no more. Lundin, while engaged in the same task, was seeking additional features; he was endeavoring to bring forth a combination structure not only staunch and safe under emergency conditions, but available for such use with a minimum of inconvenience in handling and a maximum saving in deck space when stored.
There is no evidence in the record which challenges the fact that the Lundin boat did and will function precisely as the inventor declared it would, and that the elements which went into his combination, while oíd so far as functioning capacity was concerned, had never prior thereto all been combined in a way to accomplish what Lundin did in his structure. This fact the court has found in finding XXVTII.
The defendant with confidence lays much stress on the patent to Brewster #11849, granted in 1890, an additional British patent. The lack of structural identity between the Brewster and Lundin boats is, we think, more pronounced than the noted differences between the Kjellevold and Lun-din boats. Brewster, we think, did not specify or claim, much less conceive, a boat structure which even approximates the utility features of the Lundin boat. Brewster’s boat was made of wood; the rigidity, stability, and other features incident to “ polygonal well ” escaped him, and, as observed by the plaintiff, his alleged “ cork concrete ” fender added nothing as a protecting element to the sides of the boat. It did in a measure add to its buoyancy, but as a *785 protecting fender, anticipatory of Lnndin’s supplementary sides, so constructed as to round out the contour of the boat, it was not an equivalent.
Judge Campbell in a written opinion in a suit for infringement instituted by the present plaintiff against the C. M. Lane Life Boat Co., in the United States District Court, Eastern Division, New York, wherein the Lundin patent was challenged for invalidity, 38 Fed. (2nd) 685-687, said:
“ There is no patent or publication of the prior art, pleaded as an anticipation, which suggests the combination of elements found in the patent in suit, nor are all of the necessary elements found in any two of them. An anticipation structure cannot be built up from various instances of the prior art where individual elements of the claimed combination are shown. Carnes Artificial Limb Co. v. Dilworth Arm Co., 273 F. 838, 842. * * * The patent in suit is not a pioneer patent, but it represents a distinct advance in the art, and even if each element of the patent be old, still there was invention displayed in combining these elements to produce a boat of the efficiency of the Lundin boat, which no one else had done, and no better proof is necessary to show general acquiescence than the fact that the decked metallic type of lifeboat was referred to as 'Lundin ’ in requests for bids for lifeboats for the United States Army transport U.S. Grant.”
The remaining defense is predicated upon noninfringement as to the 17 boats for the U.S.S. Grant. It has long been held and consistently followed that a mere inconsequential change in form will not enable one to escape the charge of infringement. Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120. In Walker on Patents (6th ed.), sec. 415, pp. 506, 507, the author states:
“ Primary inventions are entitled to a somewhat looser application of this definition of an equivalent than those inventions which are secondary. But a patentee is not to be denied the benefit of the doctrine of equivalents to the extent necessary to protect his actual invention, although the invention may be a narrow one. A fair statement of the rule is that ‘ the range of equivalents covered by the patent corresponds with the character of the invention, and includes all forms which embody the substance of the invention, and by like mechanical cooperation effect substantially the same *786 result. Another very clear statement of the correct rule is found in the case of Mallon v. Gregg & Co. A very illuminating statement is found in Ward Leonard v. Maxwell, where the Court stated:
“ ‘An inventor is, of course, not confined to the exact details of his disclosure, else his patent would be of small value. The extent to which he may generalize it depends not only upon the surrounding pressure of the art, but the extent to which the variations which he wishes to cover in his claims are themselves within the initiative of a journeyman in the art. For the inventor’s contribution must be a sufficient guide in itself, and its extent is limited to such substitutes for any disclosed element, as the art needs no help to find.’
“ Other substantially similar expressions of the rule are found in the reported cases.”
It is, we think, essential to approach the consideration of noninfringement, advanced by the defendant, in the light of existing facts at the time the contract for the manufacture of the boats for the Grant was let. It may not be disputed that the officials of the Government were familiar with not only the existence but the detail of construction disclosed in the Lundin patent. Approximately 1,500 of the Lundin type boats had theretofore been purchased and used by the Government, and the specifications for the 17 boats involved expressly stated that “ each boat shall be of a recognized standard design, ‘ Lundin ’ type of boat or an absolute equal”, a direct and positive recognition of not only the commercial value of the Lundin type of lifeboats, but an expressed limitation of the type of boat acceptable under the bids. Without a doubt a successful bidder under the specifications was put to the necessity of adopting the Lundin type of boat, or bringing into existence its “ absolute equal ”, a task obviously difficult to accomplish and escape infringement in view of the facts found in this case. What then was done? Finding X sets forth the facts. From this finding it clearly appears that with the one exception of “ outer sides slightly curved ” all the boats manufactured under this contract were precisely similar in construction to the Lundin type. The defendant does not in *787 sist that this slight deviation from the specifications and claims of the Lundin patent “ effects a mechanical cooperation” substantially different from the Lundin boat. The record establishes that the seemingly inconsequential change in the sides of the boats was in itself a mere choice of detail, in no sense vital to the disclosures in the Lundin patent. As a matter of fact, the entire transaction, viewed from the standpoint of facts, justifies the inference that the change in constructional formation exhibited in the contract boats, slight as it was, was the only one available in an attempt to manufacture boats of the Lundin type, and escape a charge of infringement. As Judge Campbell said (38 Fed. (2d) 687, 688, supra):
“ To relieve defendant from infringement because of the very slight change which it made in the form of the boat, which it is alleged infringes, would so narrow the patent in suit as to confine the invention to the preferred form, without the benefit of any equivalents.”
The plaintiff is entitled to a judgment for $7,540.00, with interest thereon as set forth in finding XXX. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.