## TUCKER v. UNIVERSAL AUTO CO.

(District Court, D. Connecticut. December 16, 1921.)

No. 1530.

Patents ⬅➡328—1,134,025, for oil hole cover, held valid and infringed.

> The Tucker patent, No. 1,134,025, for an oil hole cover, for automobile oilers, *held* not anticipated and valid as a new combination of old elements producing a new and useful result; also *held* infringed.

In Equity. Suit by Charles F. Tucker against the Universal Auto Company. Decree for complainant.

Heath Sutherland, of Hartford, Conn., for plaintiff.
Arthur E. Parsons, of Syracuse, N. Y., for defendant.

THOMAS, District Judge. Letters patent No. 1,134,025 were issued to Charles F. Tucker on March 30, 1915, upon an application filed November 11, 1913. The patent relates to oil hole covers.

The plaintiff charges infringement. The defenses are invalidity and noninfringement. The only real question, however, is whether the patent is valid; if it is, it is infringed, as defendant's device is almost an exact copy of plaintiff's device. The variation is very slight, and merits no consideration, if it be held that the patent is valid.

The invention disclosed, as stated in the specification, relates to—

"oil hole covers; one of the objects of the invention being the provision of an article of this character which is simple in construction, can be inexpensively and readily made, and which is thoroughly dust proof."

There is only one claim in the patent and it reads:

"An oil hole cover having a plug member, and a cap member, the cap member having the forward end open and the rear end wholly closed, said closed end being integral with the body of the cap member, a coiled spring surrounding the plug member, the cap member having an abutment for one end of the spring, the plug member having an abutment for the other end of the spring, the plug member having a bore, and also having a port opening into said bore, said spring serving to constantly advance the cap member to cause the body thereof to normally close the port and the outer end of the plug member when the cap member is advanced, having a bearing directly against said closed end of the cap member and the interior of the cap member from its outer closed end to its abutment being of uniform diameter."

The alleged infringement by the defendant consists in the use and sale of certain oilers, which are part of the equipment on a certain well-known make of automobile, for which this defendant is selling agent in and about the city of Hartford. These oilers, or oil cups, as they are commonly called, are in use on several makes of automobiles, and are used to lubricate some of the bearings, and particularly the spring bolts and shackles. The oilers alleged to infringe the Tucker patent are not manufactured by the defendant, but by the Bowen Products Corporation, of Auburn, N. Y., which corporation has conducted the defense to this suit, so that in the discussion which follows, wherever the defendant is mentioned, reference is made to the Bowen Products Corporation, the real defendant, and not the Universal Auto Company, the nominal defendant.

The defendant's device, as disclosed in the patent, consists of three parts: (1) A plug member; (2) a cap member; and (3) a spring.

The plug member has an axial bore and a port opening into the bore through its peripheral wall.

The cap member has its forward or lower end open, and its rear or upper end wholly closed; said closed end being integral with the body or peripheral wall of the cap member. The interior of the cap member, from its closed end to an inturned flange at its open end, is of uniform diameter.

The spring surrounds the plug member within the body of the cap member. One end of the spring bears against an abutment (an inturned flange) on the lower or open end of the cap member, and its other end bears against another abutment (an outwardly extending flange) on the upper end of the plug member.

The spring serves to constantly advance the cap member, causing it to cover the port. When the cap member is advanced by the spring, the outer end of the plug member has a bearing directly against said closed end of the cap member. When the cap member is advanced by the spring, the cap completely covers the port, and advances sufficiently past the port, so as to close the port and make the oiler practically dust and dirt proof.

The lower end of the plug member is threaded for attachment to a bearing to be lubricated, and directly above this threaded end, and beneath the cap member, the plug member is formed, with flat faces constituting a wrench hold, for facilitating securement of the oiler to the bearing to be lubricated.

The defendant's structure is, as has been stated, almost a Chinese copy of plaintiff's structure, and is an aggregation of the plug, cap, and spring.

The Bowen Products Corporation and its predecessors have been for years, and long before plaintiff's patent was applied for or issued, large manufacturers of lubricators of the well-known grease cup variety, as well as of the oil cup variety.

The prior art relied upon as anticipation of plaintiff's patent is Bowen's early oiler No. 1, Bowen's early oiler No. 2, and Bowen's early sheet metal grease cup cap. The patents cited are the following: To Smyth, No. 365,547, June 28, 1887; to Lewis, No. 545,598, September 3, 1895; to Bowen, No. 583,668, June 1, 1897; to Hecht, No. 797,429, August 15, 1905; to Cole (British), No. 24,494 of 1898.

The patent in suit is a simple one. Tucker has made an oiler which prevents foreign matter of any kind from getting into the interior of the oiler when it is closed, because the cap is absolutely imperforate, and in its closed position completely covers the port and extends down far enough beyond the port to completely seal the opening, into which the nozzle of an oil can is inserted and the oil introduced into the interior of the plug member, and thence to the bearing to be lubricated.

The patents to Bowen and Lewis are the only patents of the prior art necessary to consider. In the Bowen patent the feature there described is the piston to force the oil down when the cap is released, or to prevent the oil flowing backward and away from the bearing to be lubricated when the same is attached to a wheel which is rapidly revolving. In the case of a rapidly revolving wheel, the centrifugal force naturally throws the oil away from the bearing, and the piston arrangement in the Bowen patent prevents such result, and further prevents the oil from leaking out of the cap member. That is the feature in that patent; whereas, in the patent in suit, the device is intended to be attached to a fixed position, so that the bearing to be lubricated receives the oil by force of gravity. The imperforate condition of the cap member is the feature of the patent in suit, and nothing is disclosed in the Bowen patent touching this feature.

It appears from the Lewis patent that the top of the cap member is closed by a disk resting upon an internal annular shoulder formed near the end of the cap, and is confined in place against the shoulder by a lip which is formed by bending the upper edge of the cap inwardly over the disk. This cannot, as I view it, be successfully set up as an anticipation sufficient to defeat Tucker's patent. Lewis directs attention to the fact that his construction is especially advantageous for bicycles. Both Lewis and Bowen were dealing particularly with satisfactory devices for lubricating bicycle wheels. They both say so. The patent to Lewis was issued in 1895, and Bowen secured his in 1897. The problem of proper lubricating devices for automobiles was not then presented to inventors or manufacturers.

The file wrapper and contents of the Tucker patent show that the original claims were rejected on the Lewis reference, but that the

claims were subsequently amended to satisfactorily meet the Lewis patent.

It is to be noted that the patent to Lewis expired three years before the patent to Tucker was issued. If the Lewis lubricator had possessed any practical value as a device for satisfactorily lubricating automobiles, it seems likely that the defendant would have used it. Instead, nothing was done with it.

Tucker seems to have been the first one to provide a plug member, a cap member to fit over the plug member, and an interposed spring, which acts against both the plug member and the cap member, and in which the cap member is of one piece, and which is thoroughly imperforate, as a result of which the entrance of any foreign matter into a bearing is prevented when the cap member is in its forward or closed position. I find nothing like this combination in any one patent, or in any series of patents.

The law applicable to this case is found in Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196, and the cases therein cited. The Supreme Court of the United States, in Hailes v. Van Wormer, 20 Wall. 353, at page 368 (22 L. Ed. 241), said:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made."

The Tucker patent, however, cannot be met by the Bowen and Lewis patents, because neither of them discloses a wholly imperforate cap.

In Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 494, 498, 19 Sup. Ct. 641, 643 (43 L. Ed. 1058), the Supreme Court said:

"Where a combination of old devices produces a new result, such combination is doubtless patentable; but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368."

Here we have a combination of three old devices—a plug, a cap, and a spring—producing a new and useful result, to wit, the lubrication of a bearing on an automobile, which is exposed to all the dust, dirt, and water applied at times to all the surfaces of the automobile under extreme pressure and force, but excluding, nevertheless, all such foreign matter from the bearings, furnishing at the same time, a quick, easy, and effective method of lubricating the bearings, which are constantly in use.

While it is true that the invention disclosed is a small one, it seems to me that it is more than the work of a mechanic skilled in the art, and, while it does not rise to any great dignity in the field of invention, it nevertheless passes from the zone of the work of skilled mechanics into the zone of invention, and the presumption attaching to the grant of the patent helps somewhat to carry it into that zone.

There may be a decree for the plaintiff; and it is so ordered.