## JAMES L. TAYLOR MFG. CO. v. STEUERNAGEL.

(District Court, D. Connecticut. December, 1923.)

### No. 1627.

1. Patents ⬁112(3)—Issuance raises presumption of validity.

In patent case, the issuance of the patent raises a presumption of validity and presents a prima facie case.

2. Patents ⬁26(2)—Combination accomplishing better result "invention."

A combination of old elements, marking a distinct advance in the art, and accomplishing a better and surer result in a simpler and quicker manner, and with less difficulty and greater success than had ever before been achieved, is "invention."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

3. Patents ⬁16—Whether patent advance question of fact.

The question of whether or not a particular patent is a distinct advance in the art, and is therefore invention, is always one of fact.

4. Patents ⬁226—Rule stated for determining what constitutes infringement.

In determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and are to find that one thing is substantially the same as another, if it performs substantially the same function, in substantially the same way, to obtain the same result.

5. Patents ⬁236, 238—Mere omission or change in form will not necessarily avoid infringement.

The impairment of the function of a part of a patented structure, by omitting a portion, will not avoid infringement; nor will a mere change in form, where the principle of operation is preserved and appropriated.

6. Patents ⬁161—Rule for construction of patent stated.

In administering the patent law, the court first looks into the art to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially, and, if it has done so, the court is liberal in its construction of the patent to secure the inventor the reward he deserves; but if what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope.

**7. Patents ⊙⟶328—Taylor patent, No. 867,622, claims 3, 4, and 5, valid and infringed.**

Taylor patent, No. 867,622, claims 3, 4, and 5, for improvements in screw clamps used by carpenters, cabinet makers, and woodworkers, *held* valid and infringed.

In Equity. Suit by the James L. Taylor Manufacturing Company against Harry Steuernagel, trading as the Hartford Clamp Company. Decree for plaintiff.

Russell M. Everett, of Newark, N. J., and Henry E. Rockwell, of New Haven, Conn., for plaintiff.

Heath Sutherland, of Hartford, Conn., for defendant.

THOMAS, District Judge. Letters patent No. 867,622 were issued to James Taylor on October 8, 1907, and by him assigned to the plaintiff on July 6, 1918, and recorded July 20, 1918. The patent is for alleged improvements in "screw clamps" used mostly by carpenters, cabinet makers, and woodworkers for clamping glued work; the invention being useful to that branch of the woodworking industry in which strips of wood are glued and held together while setting by the clamp process, for the purpose of forming larger pieces.

The clamp in question comprises a bar having a fixed end through which a screw works to move a head toward and away from the work; the work lying on the bar and engaged at the opposite end by an adjustable stop. In this stop or head is a recess, which opens through the rear of the head, and is closed against the bar at the front of the head or clamping place. Within the recess is a wedge having a large end rearward and extending out from the recess, and to which is attached a gripping block, which engages the bar to prevent the adjustable head from sliding. A portion of the wedge is upturned to carry a projecting pin, upon which is a spring which bears against the rear wall of the recess. The spring and wedge are concealed in the adjustable head, but have extending outward therefrom a projecting end, which is provided with a finger grip, and this in turn enables the workmen to grip the wedge and adjust the head to any desired position up or down the bar. The spring acts to instantly grip the bar when pressure is applied. The clamp, so constituted, sustains the pressure of great weight, and in actual operation may, and does, receive the whole pressure of the screw and leverage. The clamp is made in many sizes, depending upon the length and width of the bar.

Claims 3, 4, and 5 are in suit and are as follows:

3. "In a clamp, the combination, with a bar, of a head slidably mounted on said bar and having on the side of the bar where the work lies a recess at its rear and being closed at its front against said bar, a wedge in said recess with its large end rearward and adapted to engage the bar, and a spring inclosed and concealed by said recess and acting longitudinally of the bar and the wedge to force said wedge forward."

4. "In a clamp, the combination with a bar, of a head slidably mounted on said bar and having on the side of the bar where the work lies a recess at its rear and being closed at its front against said bar, a wedge in said recess adapted to engage the bar and having its large end projecting rearward from

said recess and provided with a finger grasp, and a spring inclosed and concealed by said recess and acting longitudinally of the bar and the wedge to force said wedge forward."

5. "In a clamp, the combination with a bar, of a head slidably mounted on said bar and having on the side of the bar where the work lies a recess at its rear and being closed at its front against said bar and having an interior enlargement or extension of the inner end of said recess in a direction away from the bar, a wedge of said recess adapted to engage the bar and having its large end rearward, and a spring inclosed in said extension of the recess and adapted to act longitudinally of the bar and wedge upon the inner end of said wedge to force said wedge forward."

The essential element of the invention, broadly stated, is the adjustable head indicated in the drawing as Fig. 3, and it is in this head that the recess, wedge, and spring, as above described, are contained. These matters relate principally to claim 3. Claims 4 and 5 are additional features in construction, such as a finger grip at the rear end.

[1] Both validity and invention are denied. In patent cases, the issuance of the patent is a presumption of validity and presents a prima facie case. While many claims are set up in the defendant's answer, with reference to the prior art as relating to the invention of the patent in suit, but three are pressed at trial. Only these three will be considered, as the others are apparently too remote to affect the status of the patent under consideration. The three in question, close enough to be entitled to consideration, are (1) the patent to Houghton, No. 567,715, issued September 15, 1896; (2) the patent to Pinder, No. 17,229, issued May 5, 1857; and (3) the patent to Lee, Sr., No. 663,283, issued December 4, 1900.

## The Houghton Patent, No. 567,715.

This relates to a pipe wrench, a model of which was made and introduced in evidence. Its object is to grip instantly, without flattening the pipe to which the wrench is applied. The set lock or recess does not co-operate to resist relative longitudinal movement of the clip and stem. The purpose, object, and operation of the wrench were obviously, from an examination of the patent and model, entirely distinct and apart from the operation of the clamp in suit. Some of the elements of Houghton are contained in Taylor, in so far as it has a wedge and spring; but the essential operation of the wrench is to form a spacer, and in this space is inserted the pipe, which is gripped by the teeth of the two jaws of the wrench. The longitudinal movement in the Houghton patent is prevented by the gripping of these teeth on the pipe, which is unnecessary in the Taylor patent; nothing being required to hold the work in shape after the adjustable head is moved to the desired length, the gripping process being applied by the operation of the screw. In Specialty Manufacturing Co. v. Fenton Metallic Mfg. Co., 174 U. S. 494, 498, 19 Sup. Ct. 641, 643 (43 L. Ed. 1058), the Supreme Court said:

"Where a combination of old devices produces a new result, such combination is doubtless patentable; but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368."

—which case was cited by this Court in Tucker v. Universal Auto Co., 277 Fed. 469, 472.

Then, too, the testimony of the witness Raymond W. Burns clearly shows the distinction in the operation between the Houghton patent and the Taylor patent, and an examination of these patents clearly shows that there is little or nothing in common. The Houghton patent was not cited by the Examiner upon the application for the Taylor patent, and it fails to show the combination having an adjustable head with a recess containing a wedge or a gripping block.

### The Pinder Patent, No. 17,229.

This patent is nearly 70 years old, and is also an entirely different process, and was not considered or cited by the Examiner as part of the prior art. It lacks the gripping wedge and spring, as well as the bar clamp with the adjustable head, and is the ordinary hand adjustable wrench, and is not a product that is being marketed at this time to any great extent, if at all. In no substantial way does it perform the function of the patent in question.

### Lee, Sr., Patent, No. 663,283.

[2] This patent also lacks the gripping wedge action, and lacks the wedge feature entirely. There are merely two flat surfaces, which form a space in which the desired object is inserted and held in place by the meshing teeth or serrations on the bars of the jaw. This is also, in form, the usual or hand monkey wrench, and does not anticipate the patent in suit, and is also a product in little use. This disposes of the three patents cited by the defendant, and what this court said in Carnes Artificial Limb Co. v. Dilworth Arm Co., 273 Fed. 838, at page 842, applies to the case at bar with equal force:

"In view of the facts here disclosed, a general résumé of the cases applicable to this discussion sustains the doctrine that, in order to establish anticipation, it is not sufficient to pick out one part of a patented device from one prior patent, another part from some other, and still a third from a third prior patent, and then say that it is not invention to bring those several parts together, especially when the patentee is the first to conceive of so doing, and by so doing has produced a practical, operative device and has discovered 'what is the difficulty with an existing structure, and what change in its elements will correct the difficulty, even though the means for introducing that element into the combination are old and their adaptation to the new purpose involves no patentable novelty,' as Judge Lacombe held in Michle Printing Press & Mfg. Co. v. Whitlock Printing Press & Mfg. Co., 223 Fed. 647, supra, on page 650, 139 C. C. A. 201, on page 204."

The combination evolved by Taylor marked a distinct advance in the art, and it accomplished a better and surer result in a simpler and quicker manner, and with less difficulty and greater success than had ever before been achieved. This is invention. Walker on Patents (5th Ed.) § 26, and cases cited. This conclusion is supported by the testimony, which also shows that the patent in suit has met with commercial success and a favorable reception by the trade.

[3] The defendant points to the fifth paragraph of the syllabus of the decision of this court in Ball & Roller Bearing Co. v. F. C. Sanford Mfg. Co., 280 Fed. 415, and claims that it should be held here,

as was held there, that the combination involves merely mechanical skill and does not rise to the dignity of invention. But we hardly have the same situation here. The question of whether or not a particular patent is a distinct advance in the art, and is therefore invention, is always one of fact, as stated by Judge Denison in Concrete Appliances Co. et al. v. Meinken et al. (C. C. A.) 262 Fed. 958, on page 965. He said:

"As upon every such question, there is no authoritative decision which compels one or the other conclusion. The doubtful inference is rather one of fact; but we select and refer to a few instances where invention has been found— by the Supreme Court or by this court—and the facts of which may well be thought to present no stronger inferences in its favor than do those of the instant case. Loom Co. v. Higgins, 105 U. S. 581, 590, 26 L. Ed. 1177; Hobbs v. Beach, 180 U. S. 383, 393, 21 Sup. Ct. 409, 45 L. Ed. 586; Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; National Co. v. Aiken, 163 Fed. 254, 259, 91 C. C. A. 114: Warren v. Owosso, 166 Fed. 309, 92 C. C. A. 227; Morgan Co. v. Alliance Co., 176 Fed. 100, 109, 100 C. C. A. 30; Ferro-Concrete Co. v. Concrete Co., 206 Fed. 666, 124 C. C. A. 466; International Co. v. Sievert, 213 Fed. 225, 129 C. C. A. 569."

The citations offered by the defendant and the patents relating to the prior art are such that I am constrained to hold that the patent in suit is valid. Viewing the combination aspect as advanced by the defendant in its most favorable light, the rule is laid down in Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 433, 38 Sup. Ct. 547, 62 L. Ed. 1196, quoting Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 498, 19 Sup. Ct. 641, 43 L. Ed. 1058.

[4] We come, then, to the question of infringement, and the rule with reference to infringement is as laid down in Machine Co. v. Murphy, 97 U. S. 120. Mr. Justice Clifford, speaking for the court, said (97 U. S. 125, 24 L. Ed. 935):

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

And again (97 U. S. on page 125, 24 L. Ed. 935) the court said:

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

[5] Under the rules and the interpretation of the patent law as defined by the Supreme Court, I conclude that the defendant infringes upon the plaintiff's patent. Every essential working feature of the plaintiff's patent is found in the defendant's device. It has the fixed head, which is riveted to the bar, and the screw, which moves one

head by means of a handle. In the recess in the adjustable head is a wedge engaging a spiral spring, the spring being inclosed and concealed therein; and this applies, as I view it, to patent No. 1,187,109, issued June 13, 1916, to Harry A. Steuernagel. The operation of the clamp in the defendant's device corresponds in every respect with the plaintiff's patent and in appearance is almost identical. It performs the same function in substantially the same way and for the same purpose, and no attempt is even made to have the device different in appearance. Some attempt is made to differentiate by terming the different parts of the defendant's wedge by referring to it as a "camming," but the effect and result are the same in both devices. The defendant's device has some unimportant features not in the patent in suit, which enabled the defendant to secure a patent of his own, but the function and operation of the device makes it infringe, and brings it within the rule stated by this court in Manton-Gaulin Mfg. Co. v. Dairy Machinery & Construction Co., 238 Fed. 210, at page 215, in the following manner:

"The law is well settled that infringement is not avoided by dividing an integral element of a patented machine into distinct parts so long as the function and operation remain substantially the same; and the same rule applies as to the joinder of two elements into one integral part accomplishing the purpose of both, and no more, so long as the same results are accomplished. The impairment of the function of a part of a patented structure by omitting a portion will not avoid infringement, nor will a mere change in form, where the principle of operation is preserved and appropriated. Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717; Nathan v. Howard, 75 C. C. A. 97, 143 Fed. 889, and numerous cases there cited."

[6] Having already announced the conclusion reached in this case, it may be somewhat superfluous to direct attention to a very recent utterance by the Supreme Court of the United States respecting the court's general policy toward inventions and infringements, but the statement of Mr. Chief Justice Taft is so clear and succinct, and covers the whole range of many decisions in such simple yet forceful language, that I feel justified in quoting it, as it states the policy which this court has endeavored to follow in disposing of the disputes of counsel and litigants in all patent causes. In Eibel Process Co. v. Minnesota & Ontario Paper Co., decided February 19, 1923, and found in 43 Sup. Ct. 322, at page 328, 67 L. Ed. 523, the learned Chief Justice said:

"In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device. It is this differing attitude of the courts toward genuine discoveries and slight improvements that reconciles the sometimes apparently conflicting instances of construing specifications and the finding of equivalents in alleged infringements. In the case before us, for the reasons we have already reviewed, we think that Eibel made a very useful discovery, which has substantially advanced the art. His was not a pioneer patent, creating a new art; but a patent which is only an improvement on an old machine

may be very meritorious, and entitled to liberal treatment. Indeed, when one notes the crude working of machines of famous pioneer inventions and discoveries, and compares them with the modern machines and processes exemplifying the principle of the pioneer discovery, one hesitates in the division of credit between the original inventor and the improvers, and certainly finds no reason to withhold from the really meritorious improver, the application of the rule 'ut res magis valeat quam pereat,' which has been sustained in so many cases in this court. Winans v. Denmead, 15 How. 338, 341, 14 L. Ed. 717; Corning v. Burden, 15 How. 265, 269, 14 L. Ed. 683; Turrill v. Railroad Co., 1 Wall. 491, 510, 17 L. Ed. 668; Rubber Co. v. Goodyear, 9 Wall. 788, 795, 19 L. Ed. 566; McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800."

[7] Upon the authorities cited, and for the reasons given, I therefore conclude that the plaintiff's patent is valid, and that it is infringed by the defendant. There may be a decree for the plaintiff, with costs to abide the event; and it is so ordered.