**ECONOMY APPLIANCE CO. et al. v. FITZGERALD MFG. CO.**

District Court, D. Connecticut. August 1, 1928.

No. 1878.

Hans v. Briesen, of New York City (Francis V. McCarthy, of Lynn, Mass., of counsel), for plaintiffs.

Charles L. Sturtevant, of Washington, D. C. (Eugene G. Mason and Herbert H. Porter, both of Washington, D. C., of counsel), for defendant.

THOMAS, District Judge. Economy Appliance Company and Frederick W. Collier charge the defendant with infringement of claims 2, 3, 4, 5, and 9 of letters patent No. 1,358,932. The patent was issued to the plaintiff Collier as assignor to Economy Appliance Company on November 16, 1920. The application was filed February 15, 1917. The patentee has joined with his assignee in suing the alleged infringer.

Defendant does not seriously contest validity, but argues against a conclusion holding infringement, and asserts that the claims should be so limited as to exclude defendant's structure.

The patent in suit is for a toaster embodying a central heating element of the usual kind which may be heated either by gas or electricity. On either side of this heating element is a slice holder so placed that the slice of bread to be toasted will be held in position parallel to the heating element and at a predetermined distance therefrom. The problem which Collier sought to solve was concerned with the development of means for so reversing each slice holder that the untoasted portion of the bread would be brought adjacent the heating element and held by the slice holder in substantially the same position in relation to the heating element as the bread was held before reversal. This Collier accomplished by mounting his slice holder upon carrier members so designed that the slice holder can turn upon itself in a minimum of space. This turning motion is accomplished by supporting each slice holder upon two vertical axes. The carrier member moves about one of these axes in such a way as to carry the slice holder a sufficient distance from the heating element to permit reversal of the holder. The holder itself rotates about the other vertical axis.

Collier has been for many years skilled

in the toaster art. Before developing the toaster disclosed in the patent in suit, he had designed various other toasters, none of which he considered ideally successful commercially. There can be little doubt but that he was quite familiar with the more relevant prior art here introduced. He states that his invention consists primarily in the development of a device adapted so as to use a plurality of slice holders in connection with a single heating element, and in the fact that he is the first to so mount his slice holders as to cause them to rotate about two separate axes. I am convinced that the greatest merit in Collier's disclosure lies in this last feature of his invention, because, by the adoption of two axes of rotation, he is enabled to reverse the position of the slice holder within a minimum space, and thus produce a compact, attractive toaster, ideally suited for use on the dining room table. The claims in suit read as follows:

"2. In a toaster, the combination of a heating element having a plurality of heating surfaces, a plurality of slice holders and a plurality of axes for supporting the slice holders whereby the slice holders are movably mounted in such a manner with relation to the heating element that either side of a slice holder can be presented to the same surface of the heating element.

"3. In a toaster, the combination of a heating element having a plurality of heating surfaces, a plurality of slice holders, and a plurality of axes for supporting the slice holders, whereby the slice holders are movably mounted in such a manner with relation to the heating element that each slice holder is reversible with relation to that heating surface to which the slice holder is first presented.

"4. In a toaster, the combination of a heating element having a plurality of heating surfaces, a plurality of slice holders, and a plurality of axes for supporting the slice holders whereby the slice holders are movably mounted in such a manner with relation to the heating element as to be within their own space limits reversible with respect to the heating surface of the heating element to which the slice holders are first presented.

"5. In a toaster, the combination of a heating element having a plurality of heating surfaces, a plurality of slice holders, axes and carrier members for supporting the slice holders whereby through a compound movement about the axes the placement and angular positions of the slice holders with relation to the heating element are brought about and at all times controlled.

"9. In a device of the class described, the combination of a heating element having a plurality of heating surfaces, a plurality of carrier members and slice holders and a plurality of axes for supporting the carrier members and slice holders whereby the slice holders are so mounted with relation to the heating element that each slice holder is reversible by means of a motion which causes the major part of the holder to at first recede from and then to approach the heating element."

Collier discloses as the ideal embodiment of his invention a toaster, each slice holder of which is mounted upon two carrier members or crank shafts. These carrier members are so positioned as to predetermine at each stage of the rotation of the slice holder its position in relation to the heating element. The carrier members are mounted one upon either side of each slice holder, and so fixed in the frame of the toaster that during part of the revolution or reversal of the slice holder it revolves about one carrier member and during the remainder of the revolution it revolves about the other. As a result, the angular position of the slice holder in relation to the heating element is fixed and predetermined at every stage of its rotation. Collier recognized, however, that this feature is not essential to his invention, and specifies in his patent that one carrier member is sufficient support for his slice holders. The device of the patent in suit has met with a substantial measure of commercial success. Since the patent was issued, four licenses have been granted, and in each instance the patentee was approached by the prospective licensee. Under these licenses approximately 700,000 toasters have been sold, and the royalty returns to plaintiffs have been considerable.

Defendant does not seriously contest the validity of the patent in suit, but it does argue strenuously against any holding of infringement, and insists vigorously that, if the claims here involved be held valid, they should be so limited as to exclude therefrom defendant's structure. The alleged infringing toaster is made by defendant under the patent to FitzGerald, No. 1,426,284, issued August 15, 1922, on an application filed January 13, 1921. It will thus be seen that the application for this patent was not copending with that for the patent in suit, as FitzGerald filed about two months after the patent to Collier issued. The defendant has departed slightly in its commercial toaster from the disclosure of the FitzGerald patent, but the devices are so similar, and the modifications

so unimportant that the FitzGerald patent may be taken as disclosing defendant's structure.

Defendant's toaster consists of a heating element which, for all practical purposes, is identical with plaintiffs', on either side of which is mounted a slice holder. Each slice holder is supported by a single arm or rod pivotally mounted to the frame of the toaster. After one side of the bread has been toasted, and it is desired to reverse the slice holder, the slice holder is swung away from the heating element on this supporting rod or arm to a sufficient distance to permit the holder to be rotated about the end of the arm and the untoasted portion of the bread is thus presented to the heater. No provision is made in defendant's device for predetermining the angular position of the slice holder in relation to the heating element during the period of rotation. The slice holder may revolve freely about the outer end of the supporting rod or arm. It may be withdrawn from the heating element before the rotation commences, or the commencement of rotation may coincide with the commencement of the withdrawal from the heating element. Obviously defendant employs two axes as support for the slice holder; one the axis about which the slice holder revolves, the other the axis upon which the supporting arm or rod turns. Both these axes are vertical, and in their application to defendant's device perform substantially the same functions in substantially the same way as do the axes of plaintiffs' device. Plaintiff preceded defendant in the field, and, under the circumstances outlined above, the fact that defendant manufactures under a later patent can be given little weight, as was held by the Circuit Court of Appeals for this Circuit in David v. Harris, 206 F. 902, 903.

Defendant insists that the patent in suit should be limited to the device described in the specification as Collier's preferred form, which, as we have seen, requires a structure which predetermines the angular position of the slice holder in relation to the heating element at each stage of its rotation. To support this claim defendant has introduced as examples of the prior art eighteen patents. Three of them, viz., Pierce No. 835 of 1838, Nobles No. 101,652 of 1870, and Cacciatori No. 501,867 of 1893, were cited by the Patent Office during the pendency of the application for the patent in suit, and were not considered by defendant of sufficient relevancy to discuss at the hearing. Pierce shows a gridiron, Nobles a gridiron case, and Cacciatori a roasting apparatus. These patents are so remote from the patent in suit as to fail to merit serious consideration.

Three other patents cited by the Patent Office and there disregarded are relied on here by defendant. They are the patent to Hoffman, No. 976,364 of 1910, that to Guissart et al., No. 996,082 of 1911, and that to Knoblock, No. 1,011,813 of 1911. These three patents are closely similar. They all show a central heating element, designed to be placed over a gas or oil flame, about which are placed four or five toast carriers. These carriers are so arranged as to rotate about vertical axes and to present first one side of the bread to the heating element and then the other side of the bread to an adjacent but different portion of the heating element. In none of these patents are the slice holders so carried as to permit an independent reversal or rotation of any single slice holder. If one slice holder is turned on its axis, all must be turned whether the bread is toasted or not. In none of them is any device disclosed which permits a slice holder to so rotate as to present the untoasted portion of the bread to the same face of the heating element as that before which the slice holder was originally mounted. In each instance, provision is made for turning the bread from one face of the heating element to an adjacent face about a corner of the device. These three patents represent the progress the art had made in 1910. The most that can be said for them is that they faintly resemble the patent in suit. Neither Hoffman, Guissart, nor Knoblock, however, show the use of a plurality of axes to support the slice holder and permit its rotation in a minimum of space. I am satisfied that the claims of the patent in suit are not to be limited by the disclosure of any of these patents.

Defendant has introduced three patents for waffle irons and attachment, viz. the patent to George, No. 491,681 of 1893, the patent to Hess, No. 528,634 of 1894, and the patent to Ljung, No. 1,010,059 of 1911. George shows a waffle iron and a lever attachment for lifting the iron to a position above the heater so that it may be rotated on its axis and the unheated face presented to the flame. Hess shows substantially the same device, with the exception that his patent deals with the attachment, whereas George deals with the entire waffle iron. Ljung shows a still different attachment, but one designed to effect the same result. Defendant's expert considered the three patents as being substantially for the same subject-matter. The patent to Hess was selected as typical of the group, and was offered to justify de-

fendant's adoption of the swinging support for its pivoted slice holder. No claim was made that Hess anticipates Collier, and I am convinced that the materials with which Hess had to deal, that is, a liquid batter instead of bread—and a waffle iron instead of a slice holder for bread—are sufficiently remote from the problems which Collier had to face as to render this group of patents unimportant for the purposes of limiting the claims in suit. They were available for 25 years to those who sought an attractive commercial toaster, and the fact that the art generally disregarded them is evidence that plaintiff, even if he be considered as merely applying the principle shown in Hess to an electric toaster, took the step forward which involved the exercise of inventive genius.

Another group of patents offered by the defendant shows toasting devices adapted to be attached to stoves or grates. This group includes United States patent to Stafford, No. 224,740 of 1880, and the British patents to Little, No. 21,662 of 1891, to Hill, No. 26,446 of 1908, to McCormick, No. 5,750 of 1904, to Shaw, No. 16,226 of 1908, and to Kay, No. 6,110 of 1910. The patents to Stafford, Little, and Hill may be considered as disclosing substantially the same device. They all relate to .devices adapted to be hooked over grates before an open fire. When placed in position, the bread to be toasted is put into a slice holder, which in turn is pushed along carrier bars to an appropriate position before the fire. When one side of the bread is toasted, the carrier is slid back and rotated on a supporting pin, after which it is again pushed into position before the fire. None of these devices shows any kind of a heating element. They are all attachments, and are not susceptible of independent operation. They are not permanent attachments, but after use they are removed from the grate or stove door. I find nothing in these three patents which in any way limits the scope of the claims in suit. Of the remaining patents of this group Shaw discloses a similar construction, save that, in place of supporting rods for his slice carrier, he shows a frame composed of links. The difficulties of satisfactorily positioning the bread to be toasted in such a device must be apparent. Certainly his disclosure is no closer to that of the patent in suit than are the disclosures of the three patents to Stafford, Little, and Hill.

McCormick also shows a link support of a type which positions the toast even more indefinitely than does that of Shaw. Kay shows a combination device for roasting meat and warming pots and pans. Except for the fact that means are provided for heating the object to be roasted before the fire and for rotating it when in that position, this reference seems totally irrelevant. It must not be forgotten that of this group of patents all except the one to Stafford are foreign patents, which are available only for what is disclosed upon their face. Badische Anilin & Soda Fabrik v. Kalle et al. (C. C.) 94 F. 163; Permutit Co. v. Harvey Laundry Co. et al. (C. C. A.) 279 F. 713; Naylor v. Alsop Process Co. (C. C. A.) 168 F. 911, 920. I find nothing in the disclosures of this group of patents which limits the scope of the claims in suit.

There remain for consideration but three patents—those to Wiltsie, No. 1,105,230 of 1914, to Copeman, No. 1,108,552 of 1914, and to Parkhurst, No. 951,287 of 1910. Of these Parkhurst may be disposed of with the statement that it shows no means of rotating the bread to be toasted, and is introduced merely for the purpose of showing that the heating element disclosed by Collier was old, per se. Wiltsie shows a toaster having a central heating unit, on each side of which is mounted a carrier pivotally connected to the frame of the toaster at its base. When bread is to be toasted the carrier is rotated from a vertical position adjacent the heater to a horizontal position. The bread is placed in the carrier, which is again revolved to the vertical, bringing a face of the bread adjacent to the heating element. When that face of the bread has been toasted, the carrier is again returned to the horizontal. The bread slides along a grid in front of the heating element and along the carrier itself by its own weight, so that the toasted portion of the bread now rests against the carrier and the untoasted portion is in position to be returned adjacent to the heating element.

Copeman discloses a substantially similar device, except that he has added to the carrier a plate so arranged along the pivot as to facilitate the action of the bread in reversing itself. Each of these patents discloses a heating element having a plurality of heating surfaces and a plurality of slice holders. Neither patent, however, discloses means for reversing the slice holders, nor does either patent show more than a single axial support for any slice holder. The devices of these patents have been successfully marketed commercially. They operate, in my opinion, however, upon a principle totally different from that of the patent in suit. In Wiltsie and Copeman the bread is turned by an ingenious application of gravity. In the pat-

ent in suit, and in defendant's device as well, the bread is held at all times in a slice holder, which is itself rotated so as to present alternate sides of the bread to the heating element. Accordingly I find that neither Wiltsie nor Copeman has any limiting effect upon the claims in issue.

Defendant has by ingenious argument attempted to build the disclosures of the prior art upon each other, and, where one is lacking, to substitute the disclosure of another. This practice has been uniformly condemned, and the courts have repeatedly held that prior art patents are to be considered for what they disclose, and for that alone, and that an anticipation cannot be made out, nor can a valid claim be limited, by selecting part of a disclosure from one patent and part from another, and then by welding the parts together produce an anticipating or limiting structure. Detroit Motor Appliance Co. v. Burke (D. C.) 4 F.(2d) 118, 120, and cases cited; Naylor v. Alsop Process Co., supra.

Two questions remain for consideration: Are the claims limited by the patent itself? and, Does the defendant infringe?

As I understand defendant's position, it is that, where the claims in suit call for a "plurality of axes for supporting the slice holders," they have reference to the number of carrier arms or cranks which support each slice holder. As noted heretofore, Collier's ideal device, as described in the specification, has two such carrier arms for each slice holder. Defendant contends that, since its device has but one such arm, it has not the plurality of axes called for by the claims, and therefore it does not infringe. As already pointed out, the art introduced by defendant contains nothing which would require such an interpretation as that contended for by defendant. I am convinced that the construction that defendant here seeks to place upon the word "axes" is a strained one, which should not be adopted unless the patent specification clearly shows that such a construction was intended by the patentee and the Patent Office. I find nothing in the specification of the patent in suit which would indicate that Collier used the term "axes" in his claims as synonymous with "carrier member." The carrier members are referred to in the specification as "crank shafts," "shafts," and "carrier members." Claims 6, 7, and 8 of the patent, not here in suit, distinguish between the term "carrier members" and the term "plurality of axes." The specification also contains the following statement:

"The reversal of the position of the slice holder can be brought about by the use of one such carrier member as I have described; that is, the desired motion can be obtained. But in order to retain the slice holder in any desired position, I provide a second carrier member. * * * "

During the pendency of the application, the claims as originally filed were rejected as too broad. In the argument that followed, a reference was made to the axis of revolution. The use of the term "axis" in that argument was wholly at variance with the construction here sought to be placed upon the term by the defendant. I am satisfied that "plurality of axes" as used in the claims does not mean "plurality of carrier members," but means rather that the slice holder is so affixed to the frame of the toaster that its movements in relation thereto are about two separate axes. Defendant's device is a toaster having in combination a heating element with a plurality of heating surfaces, two slice holders each supported by two vertical axes, whereby the slice holders are movably mounted in such a manner with relation to the heating element that either side of a slice holder can be presented to the same surface of the heating element, so that each slice holder is reversible with relation to that heating surface to which the slice holder is first presented; so that each slice holder can be within its own space limits reversible with respect to the heating surface of the heating element to which it is first presented; and so that each slice holder is reversible by means of a motion which causes the major part of the holder to at first recede from, and then to approach, the heating element. I find that defendant's device embodies the principles disclosed in plaintiff's patent, and that defendant's combination is substantially the same as plaintiffs' combination and performs the same functions in substantially the same way. Defendant's device therefore infringes. General Electric Co. v. Alexander (C. C. A.) 280 F. 852; James L. Taylor Mfg. Co. v. Steuernagel (D. C.) 294 F. 362; A. J. Lindemann & Hoverson Co. v. J. Rose & Co. (D. C.) 264 F. 983.

One of the claims in suit, namely, claim 5, contains as a limiting requirement the provision that the placement and angular position of the slice holder with respect to the heating element are brought about and at all times controlled through the construction of the axes and carrier members which support the slice holders. In my opinion, this claim is drawn to cover, and does cover, only such toasters as are so constructed that the position of the slice holder with respect to the

heating element is predetermined during every stage of its reversal. As we have seen, this condition is obtained in Collier's preferred device. It does not exist in defendant's structure, where the slice holder is free to revolve through 360° as soon as it has been sufficiently removed from the face of the heating element. Its angular position with respect to the heating element is not, therefore, at all times controlled. I find that claim 5 is not infringed by defendant's device.

A decree may be entered for plaintiffs finding each of the claims in suit valid and claims 2, 3, 4, and 9 infringed—together with the usual order of injunction, reference, accounting, and costs.