## HURD v. COE, Commissioner of Patents.
### No. 57211.

District Court of the United States for the District of Columbia.

Dec. 10, 1936.

Thomas S. Donnelly, of Detroit, Mich., and Eugene E. Stevens, of Washington, D. C., for plaintiff.

R. F. Whitehead, Sol., for U. S. Patent Office, of Washington, D. C., for defendant.

LUHRING, Justice.

This is a proceeding by bill in equity under 35 U.S.C.A. § 63 (§ 4915, R.S.) wherein the plaintiff seeks an adjudication that he is entitled to receive a patent for his invention as specified in his claims 10 to 16, inclusive.

The invention relates to a locking mechanism adapted particularly for use in locking a spare wheel on an automobile on a suitable support.

In his specification, page 1, the plaintiff states the object of his invention as follows:

"It is an object of the invention to provide a locking mechanism whereby a vehicle wheel may be so protected that the means of securing the wheel to its support will be enclosed and the enclosing structure locked against being opened.

"Another object of this invention is the provision of a locking mechanism of this class which will be simple in structure, economical of manufacture, durable, highly efficient in use, light and easily and quickly mounted in position.

"Another object of the invention is the provision of a locking mechanism of this class which may be easily and quickly operated and which will not mar the appearance of a vehicle with which used."

Where the spare wheel and tire of an automobile are attached at the back of the automobile, the attachment mechanism is by bolts and nuts. The nuts appear in the interior of the hub of the wheel ·so that when the hub cap is placed in position these nuts are obscured from view. If the hub cap is locked in position, an unauthorized person cannot remove the nuts and thereafter remove the wheel.

In the device shown in the plaintiff's application, the hub cap contains the locking mechanism. It is provided with two outwardly extending tongues, marked 24 in Fig. 2 of the drawing, which fit inside of an inwardly extending flange at the outer portion of the wheel hub, and also with a locking mechanism which consists of a sliding bolt held in place by guides, and which can be extended or retracted by turning a cylinder after that cylinder is unlocked by a key.

The plaintiff filed his application for patent December 14, 1931, and it was given Serial No. 580,787.

Claims 10 and 11 may be regarded as typical, and are as follows:

"10. In combination a wheel hub having an opening, a hub cap having a flange for extending through said opening, a radially shiftable lock member supported on said cap and said cap flange having a guide passageway for the end of said locking member, an actuating member adapted upon rotational movement to cause radial shift of said locking member to locking or unlocking position, the outer end of said locking member when in locking position being projected behind the hub wall surrounding the hub opening whereby to lock the cap to the hub, a housing supported by said cap, a rotatable member journaled in said housing and connected with said locking bar actuating member, and means for locking said rotational member against rotation after actuation thereby of said actuating member to shift said locking member into locking position.

"11. In combination, an open faced wheel hub terminating at its outer end in a radially inwardly projecting flange; a hub cap mountable on said hub in engagement with the outer face of said flange for closing said open face; securing means carried by said cap engageable behind said flange, upon movement to operative position, for securing said cap on said hub; and means for moving said securing means to operative and inoperative position."

The claims were finally rejected by the Commissioner of Patents, acting through the Examiner in charge of the application, on May 12, 1933, and this rejection was affirmed by the Board of Appeals November 28, 1933. The plaintiff did not appeal from the decision of the Board of Appeals to the United States Court of Customs and Patent Appeals. The bill was filed in this court May 23, 1934. The ground of rejection was that the claims were unpatentable over the prior art as

shown by the patents to Toelle, 1,339,075, May 4, 1920, and Cochran, 1,755,427, April 22, 1930. At the hearing the defendant also relied upon the patents to Clench, 1,-707,458, April 2, 1929, and Hunt, 1,817,-194, August 4, 1931, as further showing the state of the art.

It may be conceded that the primary object of the plaintiff's invention was to prevent unauthorized access to the nuts on the bolts by which the wheel is secured in position.

Reference to the Cochran and the Hunt patents discloses a hub cap which is held in position by spring members.

The patent to Cochran illustrates a hub cap having an inwardly projecting flange which is designed to extend inwardly of the hub on which the cap is used. Three spring latches are shown as mounted on the Cochran hub cap which, at their free ends, project through openings formed in the inwardly projecting flange so that as the cap is placed in position these spring arms are flexed and are snapped against the hub in order to retain the cap in position on the hub. This hub cap may be removed by means of a screw driver or a similar tool.

The Hunt patent relates to a spring wire which is mounted on a hub cap so that the hub cap may be snapped in place upon the hub shell. The spring wire mounted on the inwardly projecting flange, when it enters the hub, serves as a spring latch to engage the hub and thereby mount the cap on the hub. The Hunt cap like the Cochran cap may be removed by the application of slight pressure with a screw driver or similar tool. Neither Hunt nor Cochran provides a means within the cap to lock it to the hub so as to prevent unauthorized removal.

Clench deals with a rim lock and operating means therefor. His invention was intended to provide a means for locking the rim on the wheel so that the rim could not be stolen from the wheel and thereby the theft of the tire could be prevented. In this patent there is shown a vehicle wheel having a hub which is clearly illustrated in Fig. 2. There is a part which is termed a hub cap. This part 5 has an inwardly projecting neck which threads at 54 (Fig. 2) on to the threaded end of the hub 4. Consequently the hub cap 5 is screwed in position on the hub 4 by being threaded thereon. Clench uses a lock to prevent unthreading of the cap and to this end mounts on the cap a lock mechanism having a locking finger 6 (Fig. 3) that may be projected outwardly to engage in the slot 46 cut in the end of hub 4. When this finger is engaged in the slot, a reverse rotation of the cap is prevented and the hub cap cannot be unthreaded until the lock finger 6 is retracted. Dispense with his locking mechanism and there will be means left in the Clench structure to secure the hub cap on the wheel. The locking finger of the Clench mechanism serves merely as a means for preventing reverse rotation of the hub cap from the wheel hub. It is not used for securing the hub cap on the wheel hub, and does not function as the plaintiff's locking mechanism does and does not accomplish the same result.

The Toelle patent shows a mechanism designed to be used in locking a housing used in connection with a fastening mechanism for securing spare tires in position. It is referred to as a "lock housing for screws and bolts." The defendant particularly relies upon Fig. 4 of Toelle patent. From this it appears that Toelle discloses the idea of forming a housing through the base of which a stud or bolt is projected and on-to which a nut is to be threaded. He then puts a cover plate on the housing and the cover plate carries a lock mechanism for locking the cover in position and thus inclosing the nut in the housing.

The plaintiff's device is designed for use on an open faced hub wheel, now commonly used on automobiles. This wheel has fixedly attached thereto a plate positioned at the rear of the hub and concentric there and provided with a circular opening through which the spindle projects. This plate, which is carried by the wheel, is provided with a number of openings through which studs project, these studs being carried by the rotating part of the vehicle. When the studs are projected through these openings, they extend into the interior of the hub and nuts may be threaded onto the studs to secure the wheel in position. Consequently, to thread or unthread these nuts, it is necessary to reach into the interior of the hub. When the wheel is mounted on a stationary support, as in the case of a spare wheel, similar studs are carried by the stationary support and the wheel is similarly mounted on these studs. The open

end of the hub is closed by a hub cap which is generally illustrated in the patents to Cochran and Hunt. When this hub cap is removed, the nuts may be unthreaded from the studs and the wheel removed from the support.

The plaintiff's invention provides a means for locking the hub cap in position on the hub so that in order to have access to the nuts, the locking mechanism carried by the hub must be operated. These wheels are held in position by at least five studs as was illustrated by the wheel presented at the hearing, and, therefore, there are at least five nuts inclosed in the hub. By locking the hub cap in position, access to all these nuts is prevented.

It is to be observed that the claims in controversy are all combination claims and all embody, as part of the structure, the type of wheel described. This wheel has an open face hub having at its outer end an inwardly directed circular flange projecting from the inner face of the hub cap. This flange is positioned inwardly of the periphery of the hub cap, and the portion of the cap outwardly of this flange engages against the outer face of the hub. Formed on the hub cap and projecting inwardly from the inner face thereof is a sleeve which provides a chamber 29 in which is mounted a locking device so that when the finger 36 is projected outwardly it will engage behind the inwardly turned flange 18 of the hub and thus secure the hub cap in position on the hub. In this manner the nut caps within the hub are rendered inaccessible.

■ The court cannot agree with the contention of the defendant that it would not require invention in order to place on the hub cap of Hunt or Cochran a locking mechanism such as Toelle shows. Hub caps have been used for many years. Various and unsightly devices had been resorted to for preventing theft of spare tires prior to the plaintiff's invention. The prior art relied upon by the defendant was available for a number of years to those who sought an attractive and yet efficient device to safely secure the spare wheel and tire of an automobile, but was disregarded. It remained for the plaintiff to take the step forward which involved the exercise of inventive genius. Indeed, the evidence discloses that the number of hub caps sold with a lock mounted thereon at the time of the hearing had exceeded the two million mark. It required more than mechanical skill to accomplish the results shown by the plaintiff's invention.

■ Furthermore, none of the references show the combination called for, nor are any of the devices of any of the references intended or adapted to function as the plaintiff's invention functions. The patent office has built up a hypothetical structure from a number of patents, and points to this as anticipating the plaintiff's claim. This practice is not approved by the courts. Economy Appliance Co. v. Fitzgerald Mfg. Co. (D.C.) 35 F.(2d) 756; Detroit Motor Appliance Co. v. Burke (D. C.) 4 F.(2d) 118; Naylor v. Alsop Process Co. (C.C.A.) 168 F. 911.

■ Claim 16 was also rejected as reciting an aggregation of unrelated elements. The Examiner held, and he was affirmed by the Board of Appeals, that there was not a "patentable cooperation between the yieldable means 40 carried by the cap to prevent rattling and the lock. The lock would be as effective to protect the wheel against unauthorized removal whether the spring 40 be present or not. The lock produces one result, the spring another entirely different and a totally unrelated one. There is no mutual coaction between these two to produce a single result such as is required to make a patentable combination." The court agrees with the conclusion reached by the Examiner.

The bill alleges that in Interference No. 65,743 there is involved a count embodying a claim drawn to a structure exactly the same in all substantial respects as the structure set out in the plaintiff's application, and does not patentably differ from claim 10 here involved. It is further alleged that the Patent Office has adjudicated and determined that the claim constituting the count in said interference is patentable over the prior art, and that in deciding, the Commissioner of Patents is thereby estopped from denying the patentability of said claim 10 over the prior art.

In view of the conclusions reached by the court, it is unnecessary to deal with the issue thus presented other than to suggest that the question involved in this proceeding is whether the claims here involved are patentable over the prior art.

The court finds that claims 10 to 15, inclusive, are patentable, and that the plaintiff is entitled to receive Letters Patent

therefor, and that the Commissioner of Patents should be authorized to issue such patent to the plaintiff.

The court further finds that claim 16 is unpatentable for the reasons stated by the Examiner, and that the plaintiff is not entitled to a patent therefor.

It is so ordered.